**Rodney Earl JONES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 05–88–01534–CR.

Court of Appeals of Texas,
Dallas.

Feb. 12, 1990.

Rehearing Denied March 27, 1990.

R.D. Rucker, Dallas, for appellant.

Pamela Sullivan Berdanier, for appellee.

Before McCLUNG, THOMAS and WHITTINGTON, JJ.

## OPINION

McCLUNG, Justice.

This is a drug possession case. Among other complaints, Rodney Earl Jones argues that the trial court violated the prohibitions of article 38.05 of the Code of Criminal Procedure. We agree; consequently, we reverse and remand to the trial court for further proceedings.

From the record before us, we note this brief chronology of events. The trial judge took the bench and commenced voir dire at 9:00 a.m. An Assistant District Attorney representing the State arrived a short time thereafter. At 11:20 a.m., the court and both sides had completed their voir dire. Each side was allowed ten minutes to make their strikes. At 11:45 a.m., the court recessed for lunch. During that twenty-five minute interim before the lunch break, the court conducted the arraignment, seated and swore in the jury, swore the witnesses, had the indictment read, gave the jury the usual admonishments, and told the jury to return at 12:45 p.m. The court reconvened at 12:55 p.m. and began taking testimony. A total of eight witnesses testified, both sides closed at 3:30 p.m., and the court took a recess. The jury returned to the courtroom at 3:35 p.m., and both sides made jury argument. The jury retired to the jury room for deliberations at 3:50 p.m.

After that notation, the record is silent as to any events that may have transpired immediately thereafter. However, the statement of facts next reveals the following:

(4:45 p.m., jury enters courtroom)

THE COURT: Why don't we take a break and give it up for the evening. How does that sound? *We have to go into the second phase tomorrow so we wouldn't be able to finish.* Why don't we stop for this evening. Remember my admonishments not to talk about the case either among yourselves, friends or neighbors or family members.

Don't go to the law library to try to read anything. I don't know where the scene is. If you know where it is, don't go looking for it. What else should I tell them?

SPEAKER: What time tomorrow?

THE COURT: Why don't you come back at 8 o'clock. When all twelve of you are present, knock on the door. Let us know. The bailiff will give you the charge. You can begin your deliberations at that time. *When you reach a verdict, let us know.*

*The second phase of the trial is going to be the punishment. It will probably be fairly short, probably fifteen minutes, probably twenty at the longest.*

Once again, the court will read the charge. The lawyers will be able to do their summation. You will be able to go out and do your deliberations at that time as well. We will see you tomorrow morning at 8:00. You take care of yourselves. We will see you at that time.

(4:45 p.m., jury exits courtroom)

MR. CHAMBER: Objection on the record. I am objecting to your inference that they are going to find my client guilty after they have a second trial.

THE COURT: Okay, put it on the record.

MR. CHAMBER: I would like to make an objection that the judge was inferring that a guilty verdict would come back in the second part of the trial.

THE COURT: Let the record reflect that the court did not infer it, nor did they have intent to infer it.

(4:47 p.m., jury trial adjourned to November 10, 1988)

(Emphasis added.)

■ Article 38.05 of the Texas Code of Criminal Procedure [1] states:

In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing on the case, but shall simply decide whether or not it is admissible; *nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.*

To constitute reversible error in violation of article 38.05, the comment must be such that it is reasonably calculated to benefit the State or prejudice the defendant's rights. *Varela v. State,* 561 S.W.2d 186, 192 (Tex.Crim.App.1978) (en banc). There is no dispute that the comments of the judge came before the return of the verdict. Indeed, according to the record before us, the jury had been deliberating for less than one hour, and perhaps as little as fifty minutes, when they were back in the courtroom at 4:45 p.m. There is no contention that the jury requested a recess. There is no claim the jury was having difficulty reaching a decision, or that anything occurred to interfere with their deliberations. The remarks of the judge indicate the jury was called back to the courtroom by the judge. His reason is not completely clear.

The comments by the judge that go into detail about the anticipated schedule of the following day is the matter that gives us some concern. A study of the record shows that Jones was in or near the rear of a car parked in the street when a patrol car drove up to the area. Jones, on seeing the police, is said to have started running toward the front of a nearby house. As he approached the house, the occupant pointed a pistol and threatened to shoot if he didn't stop. The occupant said he came up to the

---

1. Hereafter, all references to article 38.05 refer to Texas Code of Criminal Procedure Annotated

(Vernon 1981).

door, in spite of her threats, and threw something into the house which landed behind the TV located just inside the door. He then rapidly departed and disappeared between the house and the one next door.

Jones and other witnesses who were near the scene said Jones did not make it to the door of the house; that he responded to the threats by immediately turning to one side and going between the houses; further, that he never threw anything into the house. The occupant told her story to the officer, and his search revealed a leather pouch behind the TV that contained some plastic bags of what later was found to be crack cocaine.

The jury was to be the sole judge of the credibility of the testimony of *all* of the witnesses. Jones presented testimony refuting the State's witnesses. The jury should have been left to judge the weight and credibility of the testimony free from the influence of the trial judge.

■ The provisions of article 38.05 have been the law in Texas for close to 100 years, without any change in text. *See* TEX.CODE CRIM.PROC.ANN. art. 767 (1895) (repealed 1968). We are aware of that line of cases that hold a sufficient instruction made by the judge to disregard any comment made by him is generally sufficient to cure error. *Jackson v. State*, 548 S.W.2d 685, 695 (Tex.Crim.App.1977). We do not reach this question because the jury was not given any instructions to disregard in this case. The State argues the objection was not timely. We disagree. The objection was made at the first opportunity after the jury left the courtroom immediately after the comments by the judge. We conclude the objection was timely. We also conclude that error was brought to the court's attention at such a time that a proper instruction could have been given to the jury before they continued deliberations the next morning, had the court been disposed to correct the error.

■ We are also aware that prohibited comments by the judge not calculated to operate prejudicially to the accused will not be grounds for reversal. We think that the above noted comments violates article 38.-05. Jurors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved. Here, the jury could but surmise that the judge believed that a guilty verdict would or should be forthcoming since "We have to go into the second phase tomorrow so we wouldn't be able to finish". During voir dire, the court covered the necessity of a "second phase" only after a jury verdict of guilty, thereby the jury is aware a "second phase" comes only after a guilty verdict. To compound the error, the court then went through the process of the "second phase" again, but this time suggested it would not take more than fifteen or twenty minutes. The only reasonable interpretation which can be placed on the judge's statement is that, at least in his mind, the guilt of the appellant had already been firmly established and that very little time would be tolerated in assessing punishment. We sustain Jones' third point of error.

In view of our disposition of this appeal, it is not necessary that we pass on other contentions raised. However, since a second trial would likely raise some of these contentions, we make further comment. A judge may violate the provisions of article 38.05 by actions as well as by words, and he must not convey to the jury anything that might injure the rights of the accused any more by acts than by words. A fair reading of this record in its entirety clearly demonstrates an attitude of inordinate haste. While we do not suggest that courts should countenance delays or dilatory trial tactics, we do feel courts should be ever mindful of their duty to be sure that all accused receive the full complement of constitutional rights to a fair and impartial trial.

We reverse the judgment of the trial court and remand the case for further proceedings.