Kenneth Mark BROWN, Appellant,

v.

The STATE of Texas.

No. 0059–03.

Court of Criminal Appeals of Texas.

Dec. 3, 2003.

Randy Schaffer, Houston, for appellant.

John A. Stride, Asst. Dist. Atty., McKinney, Matthew Paul, State's Attorney, Austin, for state.

## OPINION

COCHRAN, J., delivered the opinion of the Court in which KELLER, P.J., MEYERS, PRICE, WOMACK, JOHNSON and HOLCOMB, J., joined.

Appellant appeared at his estranged wife's apartment one night and fired a shot through the front door, killing her boyfriend, Theron Gray. Appellant did not deny that he fired the fatal shot; rather, his defense was that he did not have any intent to kill Theron Gray. Over appellant's objection, the trial court instructed the jury that: "Intent or knowledge may be inferred by acts done or words spoken." The jury convicted appellant of capital murder and sentenced him to life imprisonment. The court of appeals affirmed.[1] We granted review to decide whether "[t]he Court of Appeals erred in holding that the trial court properly instructed the jury that it could infer appellant's intent by his acts done and the words spoken." We hold that the court's instruction was an improper comment on the weight of the evidence, but that the error was harmless.

### I.

Appellant and Katrina separated in June of 1998, and soon thereafter Katrina and Theron Gray were dating. Appellant learned about the new relationship, but the two did not immediately divorce. For more than a year, they often saw each other because of their daughter, Courtney, and they sometimes acted like they were still a couple. However, on March 26, 2000, Katrina asked appellant for a divorce because she was pregnant with Theron Gray's child and wanted to marry him. Appellant was angry, but said that he still wanted to be her husband and was willing to raise Theron's baby as his own. Katrina refused and left with the understanding that appellant would agree to a divorce. Two days later, appellant came to Katrina's apartment and shot Theron to death.

Appellant had spent the early part of the evening of March 28, 2000, at the Cabaret Royal drinking with friends. Around 8:00 p.m., he called Katrina from the club and learned that Theron was at her apartment. Appellant told his friends "I can't believe this, it sucks, this is B.S." and left the club. He drove to his apartment, stormed through the door, went to his bedroom for about a minute, and left again—all without saying a word to his roommate, Chris Morrow, who was home watching television. Chris then went into appellant's room and noticed that his .357 revolver was gone. He called appellant's father and the two men decided to meet at Katrina's apartment.

Appellant crashed his car on the way to Katrina's apartment. He left the car and began walking down the highway. William Orender, who noticed that appellant looked clean-cut, stopped to offer help and gave appellant a ride to a gas station near Katrina's apartment. Orender said appellant seemed preoccupied, but was otherwise friendly.

Meanwhile, Chris arrived at Katrina's apartment. Her apartment, which was on the second floor, had a first floor entrance with a stairway down to it. Katrina came down the stairs to answer the door, but, thinking appellant was using Chris to get in, she sent Chris away. Shortly thereafter, appellant arrived and rang her doorbell.

Katrina went back down the stairs, cracked the door slightly, saw that it was appellant, and told him to go away. Appellant, angry and yelling, stuck his arm and leg in the door to prevent her from closing it. She told him she was going to

---

1. *Brown v. State,* 92 S.W.3d 655 (Tex.App.-Dallas 2002).

call the police if he didn't leave. Theron, who was putting Courtney to sleep, came down the stairs, stood in front of Katrina, and pushed against the door. Appellant yelled, "Are you ready to die?" or "How does it feel to know you're about to die?" Katrina said, "He's got a gun." A neighbor also heard, "Oh, my God." Katrina started up the stairs to call 911, but she heard a shot, turned around, and saw Theron collapse. Appellant's shot went through the front door and hit Theron in the head. He died almost immediately.

As Katrina continued up the stairs, she heard two more shots. Those shots also hit Theron. She called 911, but appellant had followed her up the stairs and yanked the phone cord out of the wall. Katrina ran back down the stairs to check on Theron, but appellant stood at the top of the stairs, pointed his gun at her, and told her to come back up. He continued yelling, asking her why she chose Theron over him, why she couldn't love him. Katrina went upstairs and into Courtney's room. Appellant meanwhile, stood over the balcony and yelled down at Theron something like "You're not going to raise my daughter, you f... s... hole."

Katrina shut Courtney's bedroom door, went to the window, and saw policemen outside. She told them someone was dead and that her "ex-husband" was still inside with a gun. The police helped Katrina and Courtney get out through the bedroom window.

Appellant eventually complied with police demands that he surrender. He walked out the front door carrying his gun, but put it down when police ordered him to. As he was being handcuffed, he told the arresting officer, "It's okay, I won't hurt you. I've killed everyone I wanted to kill." His pockets were full of bullets.

The trial judge's proposed jury instructions included the sentence: "Intent or knowledge may be inferred by acts done or words spoken before, during, or after the conduct in question." When appellant objected to this instruction, the prosecutor suggested deleting the phrase "before, during, or after the conduct in question," which the trial court did. Appellant nonetheless objected to the modified instruction.

In the course of affirming appellant's capital murder conviction, the court of appeals held that this instruction did not comment on the weight of the evidence or violate article 36.14.[2]

## II.

Article 36.14 of the Code of Criminal Procedure requires the trial judge to give the jury:

> a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence, not summing up the testimony, discussing the facts or using any argument in his charge calculated to arouse the sympathy or excite the passions of the jury.[3]

In the Texas adversarial system, the judge is a neutral arbiter between the advocates; he is the instructor in the law to the jury, but he is not involved in the fray.[4] The advocates have the task of producing the evidence, arguing its significance, and pointing out the logical inferences that flow from that evidence. The jurors, meanwhile, are primarily passive listeners

---

2. *Id.* at 665.

3. Tex.Code Crim. Proc. art. 36.14.

4. *See Lagrone v. State,* 84 Tex.Crim. 609, 615, 209 S.W. 411, 415 (1919) ("[t]he law contemplates that the trial judge shall maintain an attitude of neutrality throughout the trial").

who are supposed to remain open-minded until the evidence is complete and the judge has given them the black-letter law in his written charge. "The adversary theory ... maintains that the devotion of the participants, judge, juror and advocate, each to a single function, leads to the fairest and most efficient resolution of the dispute."[5]

■■■ Article 36.14 is a reflection of that devotion to a strict division of duties. The primary reason for the rule is that an instruction "by the trial judge to the jury on the weight of the evidence reduces the State's burden of proving guilt beyond a reasonable doubt to the jury's satisfac-tion."[6] In Texas, a trial judge must also must refrain from making any remark calculated to convey to the jury his opinion of the case.[7] As we have explained: "[j]urors are prone to seize with alacrity upon any conduct or language of the trial judge which they may interpret as shedding light upon his view of the weight of the evidence, or the merits of the issues involved."[8] Thus, as an obvious example, a judge cannot tell a jury during guilt-innocence that it would reach the punishment phase the next day because the only reasonable inference for the jury is that the defendant's guilt had been established in the judge's mind.[9]

> In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; nor shall he, at any stage of the proceeding previous to the return of the verdict, make any remark calculated to convey to the jury his opinion of the case.

**5.** *See Morrison v. State,* 845 S.W.2d 882, 885 (Tex.Crim.App.1992). This strict division of labor has been explained as necessary because "maintaining juror impartiality [is] fundamental to adversarial integrity," and "[p]arty responsibility for the production of evidence insulates the jury, to the greatest extent possible, from the contest." *Id.* at 887 & 885. Accordingly, jurors in Texas are not allowed to actively participate in the trial—by, for example, soliciting evidence by questioning witnesses. *Id.* at 889. For the very same reasons, the judge ordinarily may not question witnesses in front of the jury. *Drake v. State,* 65 Tex.Crim. 282, 288, 143 S.W. 1157, 1160 (1912) ("in the examination of a witness, however fair-minded the judge may be, it would be almost impossible for him to so conduct it as not to suggest in some measure that he is on one side or the other.... By carefully attending to his own duties and con-serving his own functions, he will best be able to hold the scales of justice impartially as between the counsel who are managing the case for and against the state; and, whenever he does interfere, it is generally at the expense of his own authority and dignity, which should be rigidly guarded, in order that he may administer the law with fairness and impartiality, and with that authority and power which pertains to the office").

**6.** 43 Dix & Dawson, Texas Practice: Criminal Practice and Procedure § 36.36 (2d ed.2001).

**7.** Tex.Code Crim. Proc. art 38.05 provides:

**8.** *Lagrone,* 84 Tex.Crim. at 615–16, 209 S.W. at 415; *see also Harrell v. State,* 120 Tex. Crim. 359, 361, 47 S.W.2d 311, 311 (1932) ("[t]o the jury, the language and the conduct of the trial court have a special and peculiar weight"); *Davis v. State,* 114 Tex.Crim. 72, 74, 24 S.W.2d 417, 418 (1929) (quoting *Lagrone*); *Linton v. State,* 106 Tex.Crim. 165, 166, 291 S.W. 250, 251 (1927) ("[t]rial judges should be very guarded in their verbal statements or comments upon the testimony to and in the presence and hearing of the jury in order to avoid impressing the jury with the idea that the court entertained any impressions of the case which he wished them to know, and putting before them matters which should not enter into or affect their deliberation").

**9.** *Jones v. State,* 788 S.W.2d 834, 835 (Tex. App.-Dallas 1990, no pet.)(during a break in deliberations at guilt-innocence, the court said, "Why don't we take a break and give it up for the evening. How does that sound? We have to go into the second phase tomorrow so we wouldn't be able to finish.... The second phase of the trial is going to be the

On the far end of the "improper-judicial-comment" scale is a comment or instruction that states a mandatory presumption and thereby violates due process. Mandatory presumptions violate due process by shifting the burden of production or proof to a criminal defendant on a critical fact or element of the offense.[10] Thus, in *Francis v. Franklin*,[11] a case factually similar to this one—in which the defendant fired a shot through a door, killing someone—the Supreme Court held that the first two sentences of the following instruction violated due process:

> The acts of a person of sound mind and discretion are presumed to be the product of the person's will, but the presumption may be rebutted. A person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts, but the presumption may be rebutted. A person will not be presumed to act with criminal intention but the trier of facts, that is, the Jury, may find criminal intention upon a consideration of the words, conduct, de-

meanor, motive and all other circumstances connected with the act for which the accused is prosecuted.[12]

The Supreme Court concluded that this instruction constituted reversible error because "[t]he challenged sentences are cast in the language of command."[13] Standing alone, that language created an unconstitutional burden-shifting presumption on the element of intent.[14] The Court held that, to meet due process, any such instruction must be permissive rather than mandatory ("you may infer" rather than "the law presumes"), and there must be a reasonably tight logical fit between the basic facts proved and the ultimate fact inferred. The inferred fact must be "more likely than not to flow from" the proven facts.[15]

Somewhere in the middle of the "improper-judicial-comment" scale are instructions on non-statutory presumptions or "vehicles employed to review the sufficiency of evidence."[16] Texas courts are forbidden from instructing the jury on any presumption or evidentiary sufficiency rule that does not have a statutory basis.[17] Ac-

---

punishment. It will probably be fairly short, probably fifteen minutes, probably twenty at the longest").

**10.** *Sandstrom v. Montana*, 442 U.S. 510, 514–19, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Ulster Cty. Ct. v. Allen*, 442 U.S. 140, 157–63, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979); *Mullaney v. Wilbur*, 421 U.S. 684, 696–704, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)

**11.** 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

**12.** 471 U.S. at 311–12, 105 S.Ct. 1965.

**13.** *Id.* at 316, 105 S.Ct. 1965.

**14.** *Id.* at 318, 105 S.Ct. 1965. And:
In light of the instructions on intent given in this case, a reasonable juror could thus have thought that, although intent must be proved beyond a reasonable doubt, proof of the firing of the gun and its ordinary consequences constituted proof of intent beyond

a reasonable doubt unless the defendant persuaded the jury otherwise.
*Id.* at 319, 105 S.Ct. 1965.

**15.** *Allen*, 442 U.S. at 165, 99 S.Ct. 2213.

**16.** *Aguilar v. State*, 682 S.W.2d 556, 558 (Tex. Crim.App.1985); *see generally* 43 GEORGE E. DIX & ROBERT O. DAWSON, TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 31.02 (2d Ed.2001) (discussing distinction between judicial rules for assessing sufficiency of evidence and instructions given to the jury to use in certain circumstances).

**17.** TEX.CODE CRIM. PROC. art. 38.04 provides that:
The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony, except where it is provided by law that proof of any particular fact is to be taken as either conclusive or presumptive proof of the existence of another fact, or where the law directs that a

cordingly, both appellate and trial courts may measure the sufficiency of evidence by resort to a judicial presumption, but the jury cannot be told of that presumption or rule. For example, the presumption of an intent to commit theft arises from the nonconsensual nighttime entry of a home or building.[18] But an instruction to the jury on this legal "presumption" is an improper comment on the weight of the evidence.[19] In *Browning v. State*,[20] we explained that giving an instruction to the jury on these judicial evidentiary sufficiency review rules improperly picks out one specific, though entirely logical, inference that could flow from the base facts from all other plausible inferences:

In any given case the jury could make any number of reasonable inferences. But when the trial court, the only source of law the jury has, picks out only one such inference and instructs the jury that that one, though rebuttable, is a presumption provided by law, the court gives the force of law to that one possible inference. In fact neither statute nor caselaw provides such a "presump-

tion" at the trial level. Instructing the jury that it does constitutes, in effect, a comment on the weight of the evidence. We do not hold that the jury may not make such an inference, nor that an appellate court in reviewing the sufficiency of the evidence may not assume that the jury made such a reasonable inference. The error lies in *instructing* the jury that they may apply such an inference.[21]

Although these judicial review rules may state the obvious, they also inform the jury of the minimum amount of evidence from which they may find an element of the offense, *i.e.,* a person's intent. "But that is something for the jury itself to decide."[22]

Similarly, in homicide prosecutions, the defendant's state of mind is a question of fact that must be determined by the jury.[23] The intent to kill cannot be presumed as a matter of law. The jury may, of course, infer intent from any facts in evidence which it determines proves the existence of such intent to kill, such as the use of a deadly weapon.[24] Nevertheless, a court may not instruct a jury that "intent

certain degree of weight is to be attached to a certain species of evidence.

Some statutory presumptions which a jury may be instructed upon are: the presumption that a dealer in second-hand property who knowingly or recklessly fails to keep adequate records knew that stolen property in his possession was stolen when he paid twenty-five dollars or more for it (Tex. Pen.Code § 31.03(c)(3)); the presumption that a person intends to avoid payment for services if he absconds without paying for services in circumstances in which payment is ordinarily made immediately upon rendering the service (Tex. Pen.Code § 31.04(b)(1)); the presumption of recklessness and danger, under the deadly conduct statute, if a person knowingly points a firearm at or in the direction of another (Tex. Pen.Code § 22.05(c)). Tex. Penal Code § 2.05 governs the use of the statutory presumptions. Its provisions are designed to ensure that the presumptions are permissive and therefore constitutional. *See Willis v.*

*State,* 790 S.W.2d 307, 310 (Tex.Crim.App. 1990)(the Legislature enacted Section 2.05 " 'to specify the procedural consequences of a presumption [and] to satisfy ... constitutional strictures' ").

18. *Aguilar v. State,* 682 S.W.2d at 558.

19. *Watts v. State,* 99 S.W.3d 604, 612 n. 25 (Tex.Crim.App.2003).

20. 720 S.W.2d 504 (Tex.Crim.App.1986).

21. *Id.* at 507 (footnote omitted; emphasis in original).

22. *Id.*

23. *Smith v. State,* 965 S.W.2d 509 (Tex.Crim. App.1998).

24. *Hall v. State,* 418 S.W.2d 810, 812 (Tex. Crim.App.1967).

to kill may be inferred from the use of a deadly weapon" because that instruction would be an impermissible comment on the weight of the evidence.[25] It singles out a specific type of evidence and tells the jury that it may infer an element of the crime (such as criminal intent) from that evidence.

Finally, a court's jury instruction could violate article 36.14 less obviously. For example, it might obliquely or indirectly convey some opinion on the weight of the evidence by singling out that evidence and inviting the jury to pay particular attention to it. On this near end of the "improper-judicial comment" spectrum is an instruction that is simply unnecessary and fails to clarify the law for the jury. The Austin Court of Appeals held the following instruction to be just that:

> You are instructed that if a Defendant allows his physical condition to deteriorate to such an extent that he thereby makes himself more susceptible to the influence of alcohol than he otherwise would have been and by reason thereof he becomes intoxicated by the introduction of alcohol into his body, he would be in the same position as though his intoxication, if any, was produced by the use of alcohol alone and you find facts of the foregoing beyond a reasonable doubt.[26]

This instruction, according to the court of appeals, was improper because there was no evidence in the record establishing such a synergistic effect between fatigue and alcohol.[27] The instruction "allowed the State to engage in argument and spec-

ulation beyond any evidence contained in the record and to convince a lay jury from a 'common knowledge' point of view."[28] The court noted that, while the instruction itself was neutral, in context, it bordered on an improper comment on the weight of the evidence.[29]

With the "improper-judicial comment" scale in mind, we turn to the instruction given in this case.

### III.

We conclude that the instruction "intent or knowledge may be inferred by acts done or words spoken" falls on the near side of the "improper judicial comment" scale. We remarked on the benign quality of this instruction some thirty years ago. As was pointed out by the court of appeals, in *Cain v. State*,[30] we stated that the trial judge's instruction that "intent may be inferred from acts done, if any, or words spoken, if any" avoided a comment on the weight of the evidence as prohibited by article 36.14.[31] However, in *Cain* we were reviewing, not the appropriateness of that particular instruction, but rather that defendant's claim that the trial court erred in failing to specifically instruct the jury that the *res gestae* statements admitted in evidence could be considered on the issue of intent. This Court's conclusion in *Cain* implied that the defendant's requested instruction was unnecessary and would have been a clear comment on the weight of the evidence.[32] In *Cain*, no one complained about the "intent may be inferred from acts done, if

25. *Mercado v. State,* 718 S.W.2d 291, 293 (Tex.Crim.App.1986).

26. *Atkins v. State,* 990 S.W.2d 763, 765 (Tex.App.Austin 1999, pet. ref'd).

27. *Id.* at 767–768.

28. *Id.* at 768.

29. *Id.*

30. 549 S.W.2d 707 (Tex.Crim.App.1977).

31. *Id.* at 715.

32. *Id.*

any, or words spoken, if any" instruction, thus this Court's statement was dicta.

More recently, in *Garcia v. State*,[33] a capital murder defendant did argue on appeal that instructing the jury that "intent or knowledge may be inferred by acts done or words spoken" was a comment on the weight of the evidence.[34] But this Court, without addressing the merits of the question, held that any potential error was harmless under *Almanza*.[35]

The Fort Worth, San Antonio, and Texarkana Courts of Appeals, citing *Garcia*, have held that this, or a very similar instruction, is a comment on the weight of the evidence and does violate article 36.14.[36] In this case, however, the Dallas Court of Appeals disagreed. In a thoughtful and thorough opinion, the court found this particular instruction different from the instructions we have previously disapproved of because it did not instruct the jury that if it found a specific set of facts (such as breaking and entering a building at nighttime or the use of a deadly weapon), it could presume that the State had met its burden of proof as to one of the elements (such as intent to commit theft or intent to kill) regardless of the rest of the evidence.[37] The Dallas court held that the instruction in this case did not instruct on a presumption, single out one reasonable

inference, or inform the jury that any specific words or acts could suffice to prove appellant had the requisite criminal intent. As such, it found *Browning* and its progeny did not support a holding that the instruction given in this case commented on the weight of the evidence.[38]

Although we recognize that it is a close call, we disagree. While the instruction is certainly neutral and it does not pluck out any specific piece of evidence, it does focus the jury's attention on the type of evidence that may support a finding of criminal intent. Thus, we agree with the Fort Worth court that the challenged instruction:

> is sufficiently similar to the language that the court has held to be erroneous to cause concern. Taken in the context in which it was given, the instruction improperly tells the jury how to consider certain evidence before it. While it is indeed permissible for a jury to infer mental culpability from an accused's acts, words, and conduct, the trial court may not instruct the jury that it may apply such an inference.[39]

We hold that this instruction marginally falls on the wrong side of the "improper-judicial-comment" scale because it is simply unnecessary and fails to clarify the law for the jury.[40] It is not a statutory pre-

---

33. 919 S.W.2d 370 (Tex.Crim.App.1996) (op. on reh'g).

34. *Id.* at 396.

35. *Id.* at 396–97 ("[a]ssuming, arguendo, that it was error to include the complained-of words in the jury charge" any error was "harmless beyond a reasonable doubt").

36. *Ward v. State*, 72 S.W.3d 413, 418 (Tex. App.-Fort Worth 2002, no pet.); *Lam v. State*, 25 S.W.3d 233, 240 (Tex.App.-San Antonio 2000, no pet.); *Peterson v. State*, 942 S.W.2d 206, 207–08 (Tex.App.-Texarkana 1997, pet. ref'd). As pointed out by the Dallas Court of Appeals, all three of those courts relied on

*Browning* and its progeny, and either relied on or mentioned *Garcia*. *Brown*, 92 S.W.3d at 664.

37. *Brown*, 92 S.W.3d at 665.

38. *Id.*

39. *Ward*, 72 S.W.3d at 418.

40. At oral argument, appellant's counsel argued that judicial approval of this instruction might well open a "Pandora's box," with both the State and defense requesting jury charge instructions on other "benign" judicial review rules or extra-statutory factors that courts use

sumption, but it is a judicial review device for assessing the sufficiency of evidence to support a jury's finding of culpable intent. It is a common-sense tool for a trial judge to use in gauging the sufficiency of the evidence at a motion for directed verdict or motion for new trial and for sufficiency review by appellate courts, but it is not an explicit legal tool for the jury. Thus, the trial court erred in giving this instruction to the jury.

## IV.

Almanza v. State[41] sets out the standard for analyzing harm from a jury charge error in a criminal setting:

> If the error in the charge was the subject of a timely objection in the trial court, then reversal is required if the error is "calculated to injure the rights of defendant," which means no more than that there must be some harm to the accused from the error.[42]

That cannot be said of this instruction. The instruction is mild, neutral, and an obvious common-sense proposition.

Appellant argues that the only issue in this case was intent, and therefore any improper judicial instruction relating to that one disputed issue was, *ipso facto*, harmful. He notes that the jury was charged on both capital murder and the lesser included offense of murder. If appellant meant to kill Theron, he committed capital murder. If appellant meant to pull the trigger but did not have the specific intent to kill, he committed murder. Of course, both the prosecution and the defense may argue the common-sense proposition that "intent or knowledge may be inferred by acts done or words spoken." Indeed, that is precisely what they did do. The State argued that appellant's acts and words demonstrated his intent to kill; the defense argued they did not.[43] The jury did not need any judicial instruction to focus its attention on the various statements appellant made the night he killed Theron or the various acts he performed both before and after the shooting. The advocates focused the jury's attention quite competently on the disputed issue, each side using exactly the same language as in the jury charge to prove its point.

Normally, we would remand to the court of appeals so that it could determine if there was harm, but because this instruction was benign, albeit improper, we hold that the error was not, in any sense, harm-

---

in weighing sufficiency of the evidence or evaluating testimony. We agree that a bright-line rule disapproving the inclusion of even neutral judicial review rules or appellate presumptions in the jury instructions is easier for the bench and bar to administer, but we are unwilling to go that far today.

**41.** 686 S.W.2d 157, 171 (Tex.Crim.App.1984)

**42.** 686 S.W.2d at 171.

**43.** The State, for instance, argued: "He stands over him firing more shots. That shows what his intent was. It also is clear what his intent was when he is taken out by the police, taken down to the ground, and as they are patting him down he makes the statement, 'You don't have anything to worry about. I'm not going to hurt you. I've already killed the person I came to kill.' That's his intent." And later: "You may infer intent from acts done or words spoken. Look at his acts. Look at his words."

The defense, in turn, pointed out that appellant actually said, "I killed the person I wanted to [not came to] kill." The defense suggested that although appellant may have wanted Theron dead, he did not intend to kill him that night; he might have just wanted to force his way in to talk to Katrina.

Both sides used the same common-sense proposition, that a person's intent may be inferred from his words and acts, to reach precisely opposite conclusions. It is hard to see, therefore, how one side was disadvantaged in this case by the trial court's instruction.

ful under *Almanza.*[44] We therefore affirm the court of appeals.

HERVEY, J., filed a concurring opinion in which KEASLER, J., joined.

HERVEY, J., filed a concurring opinion in which KEASLER, J., joined.

I disagree that the trial court commented on the weight of the evidence when it instructed the jury that "intent or knowledge may be inferred by acts done or words spoken." This instruction does not "express any opinion as to the weight of the evidence" which is what the plain language of Article 36.14, TEX.CODE CRIM. PROC., actually prohibits. *See also Brown v. State,* 122 S.W.3d 798, 799 (Tex.Cr.App. No. 0059-03, delivered this date) (comment on weight of evidence is "any remark [by the trial judge] calculated to convey to the jury [the trial judge's] opinion of the case"); *Watts v. State,* 99 S.W.3d 604, 611 n. 24 (Tex.Cr.App.2003) (Article 36.14 forbids trial judge from "any discussion in the jury's presence of evidence adduced at trial which might suggest to the jury the judge's personal estimation of the strength or credibility of such evidence or which might tend to emphasize such evidence by repetition or recapitulation"). In addition, Article 36.14 does not contain an "improper-judicial-comment" sliding scale as explained by the Court's opinion. *See Brown,* at 799 ("far end"), at 800 ("middle"), at 801 ("near end"). The Article 36.14 issue simply is whether the instruction "expresses [the trial judge's] opinion as to the weight of the evidence."

The resolution of this rather straightforward question is somewhat complicated by this Court's decisions in *Browning* and *Mercado.* *See Browning v. State,* 720 S.W.2d 504 (Tex.Cr.App.1986); *Mercado v. State,* 718 S.W.2d 291 (Tex.Cr.App.1986). The Court of Appeals, however, did a fine job of distinguishing these cases and explaining why they do not control the disposition of this case. *See Brown v. State,* 92 S.W.3d 655, 663–65 (Tex.App.-Dallas 2002).

Even so *Browning* and *Mercado* are somewhat problematical with the plain language of Article 36.14. *Browning* was a burglary of a habitation case in which the jury was instructed that it may presume the defendant's intent to commit theft from evidence that he broke into the building at nighttime. *See Browning,* 720 S.W.2d at 507–08. *Browning* decided that this was a comment on the weight of the evidence because the "jury was instructed, in other words, that they could ignore appellant's defensive evidence altogether." *See id.* *Mercado* was an attempted murder case in which the jury was instructed that it could presume the defendant's intent to kill from the use of a deadly weapon. *See Mercado,* 718 S.W.2d at 292–93. Following *Browning, Mercado* decided that this was a comment on the weight of the evidence by "singling out one reasonable inference." *See id.*

It is difficult, however, to characterize these instructions as the trial court expressing its opinion on the weight of the evidence or the "judge's personal estimation of the strength or credibility of such evidence." And, with its use of such phrases as "in other words," *Browning* and *Mercado* apparently could only do so by recasting the instructions to say something that they really did not say.

This is not to say that the instructions in these cases were proper. But, if they

---

44. *Almanza,* 686 S.W.2d at 171. *See also Garcia,* 919 S.W.2d at 397 (any error in this instruction was harmless beyond a reasonable doubt); *Ward,* 72 S.W.3d at 418–19 (any error in this unobjected-to instruction did not rise to level of egregious harm); *Lam,* 25 S.W.3d at 240–41 (same).

were improper, it has to be for some other reason than that they were comments on the weight of the evidence. For example, it could be argued that they violated due process. *See generally Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985). But, since these instructions (as the one at issue here) were not "cast in the language of command," then it is doubtful that they violated due process. *See Francis*, 471 U.S. at 311–18, 105 S.Ct. 1965; *Brown*, at 798–799.

Since I cannot conclude that the instruction in this case was a comment on the weight of the evidence, I would decide, consistent with the approach in our decision in *Mendoza v. State*, that it is within a trial court's discretion to submit this instruction and that the trial court did not abuse its discretion to do so in this case. *See Mendoza v. State*, 88 S.W.3d 236, 240 (Tex.Cr.App.2002). The Court's "improper judicial comment" (far end, middle, near end) sliding scale [1] has the very real potential of creating wasteful future litigation particularly in analyzing jury instructions such as the one here that (if erroneous) are never harmful. In finding the error in this case harmless, the Court's opinion "in other words" says as much.

With these comments, I concur only in the Court's judgment.

---

1. *Brown*, at 801 (analyzing the instruction in this case with the "improper-judicial com-ment scale in mind") (internal quotes omitted).