IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1202-03






THOMAS KERR GRAY, III, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE FIRST COURT OF APPEALS


HARRIS COUNTY





 Cochran, J., joined by Meyers, J., filed a dissenting opinion.


O P I N I O N 



 I respectfully dissent. I would overrule both Garcia v. State (1) and Sutton v. State, (2)
reverse the court of appeals' judgment, and remand this case to that court for a harm analysis
because the trial court's application paragraph was technically improper and the "synergistic
effect" jury instruction is not part of the law applicable in a DWI case.

I.


 The evidence at trial showed that the 17-year-old appellant was arrested for DWI after
he rear-ended another driver's truck with his blue Lexus. When a police officer arrived at
the accident scene, he noticed that appellant smelled of alcohol, had constricted pupils, and
did not appear to have the normal use of his mental or physical faculties. The officer
administered an HGN test which indicated intoxication, a portable breath test which indicated
that appellant had alcohol in his system, and field sobriety tests which appellant could not
perform successfully. Appellant told the officer that he was taking anti-depressant
medications, including Respiratol, Zoloft, Klonopin, and Depical. According to appellant's
father, these medications caused "disorientation" and "dizziness." Appellant's stepmother
said that one of the drugs, Depical, caused appellant to become very disoriented. In rebuttal,
the State called a chemist who testified that these anti-depressant medications could
accelerate the action of alcohol, causing mental and physical impairment in a driver with only
a small amount of alcohol.

 As a part of the jury charge in this case, the trial judge included the following general
instruction: 

 You are further instructed that if a Defendant indulges in the use of a
drug, to wit, Respiratol, Zoloft, Klonopin and/or Depical, to such an extent that
he thereby makes himself more susceptible to the influence of alcohol than he
otherwise would have been, and by reason thereof becomes intoxicated from
recent use of alcohol, he would be in the same position as though his
intoxication was produced by the use of alcohol alone.


Although appellant was charged only with intoxication by means of alcohol, the trial judge
also included, in the application paragraph of the charge, an instruction that the jury could
convict appellant of DWI if it found that he was intoxicated "by reason of the introduction
of alcohol into his body, either alone or in combination with Respiratol, Zoloft, Klonopin
and/or Depical."

 During closing argument, the defense attorney agreed that appellant was "obviously"
impaired at the time he rear-ended the other driver's truck. His defense was that this mental
and physical impairment was not caused by the alcohol appellant had consumed, but rather
by the anti-depressant drugs he was taking. The jury, by its verdict, rejected this defense and
convicted appellant of DWI.

 The issue before us is whether the trial court's "synergistic effect" jury instruction and
its application paragraph, permitting conviction upon proof of intoxication by means of a
combination of alcohol and drugs, were proper when appellant was charged only with
intoxication by means of alcohol.

II.


 Appellant argues that the trial court erred in charging the jury on intoxication by
means of a combination of drugs as well as by means of alcohol alone. According to
appellant, the application paragraph broadened the allegations in the information and
permitted conviction for DWI on a basis which was not specifically pleaded. 

 I think that appellant is technically correct. However, I would take this opportunity
to overrule Garcia which held that, in a DWI prosecution, "the type of intoxicant used, i.e.,
alcohol, a controlled substance, a drug, or a combination of two or more of these substances,
becomes an element of the offense and critically necessary to the State's proof." (3) Garcia is
no longer good law because the DWI statute has been amended so that the type of intoxicant
that a person consumed to become physically or mentally impaired is of no legal significance. 
 When Garcia was decided in 1988, there were only three possible "intoxicants" that
were subject to prosecution under the DWI statute: alcohol, a controlled substance, or a
drug. A driver who was impaired because of the ingestion of any one of these three
substances, either alone or in combination, could be convicted of DWI. In 1993, the
Legislature amended the definition of "intoxicated" to include "alcohol, a controlled
substance, a drug, a dangerous drug, a combination of two or more of those substances, or
any other substance." (4) Any other substance at all. Under current law, if a person eats too
many M&Ms- either alone or in combination with alcohol, drugs, water, or whatever- such
that his mental and physical faculties are impaired, he may be prosecuted for DWI. 
However, "eating M&Ms" is clearly not an element of the offense of DWI. "Intoxicated"
is an element of DWI, and it is a physical state of being, regardless of the specific substance
which caused the impairment. 

 The purpose of DWI laws, both here in Texas and across the nation, is to prevent and
punish the "carnage caused by drunk drivers." (5) These laws are not focused upon the type
of substance that caused the driver to become "drunk" and then get behind the wheel of a car. 
The law does not differentiate between the drunk driver who was intoxicated because he
consumed alcohol, or injected heroin, or sniffed glue, or took prescription medicine. It is the
act of driving while one's mental or physical faculties are impaired that is inherently
dangerous and the target of our DWI law. 

 This case is a prime example of the Dickensian hair-splitting that we have allowed
ourselves to fall into. Appellant makes no claim that he was not intoxicated at the time he
rear-ended a fellow driver. He admits that he was a physically and mentally impaired driver. 
His contention is simply that he was not intoxicated because of the alcohol he drank; instead,
he was intoxicated because of the anti-depressants he was taking. This is a "defense" that
is condoned, if not encouraged, by our decision in Garcia which requires the State to allege
the precise substance that it thinks caused an impaired driver's intoxication, and then permits
that driver to defend against the charge by claiming that he was intoxicated on some other
substance. 

 Nonetheless, the State, in this case did allege only alcohol as the means of intoxication
in its information. I certainly cannot fault the State for doing so, as it was conscientiously
following the dictates set down by this Court in Garcia. But our law is also clear that if the
State alleges a specific intoxicant, such as alcohol, it must prove what it pleads because that
substance is descriptive of an element. (6) Generally, when an element or term is defined by
statute, such as the element "intoxicated," it need not be further alleged in the indictment. (7) 
The specific name of the substance that caused a person's intoxicated state is not an element
of the offense of DWI, nor is there now a discrete statutory list of specific intoxicating
substances that the State must rely upon in obtaining a DWI conviction. Thus, the name of
the substance is an evidentiary matter, not an element of the offense or a specifically defined
statutory manner and means of committing the offense of DWI. (8)

 The defendant is, of course, entitled to due process notice of the charge against him,
but as we recently held in Kellar v. State, (9) such notice need not always come from the face
of the indictment or information. It may come as well from formal or informal discovery
procedures. Furthermore, in many instances, the defendant may be the only person who has
knowledge of whether he consumed substances in addition to those alleged by the State. In
any event, it should not be a defense to DWI that the defendant was intoxicated on one
substance instead of another substance. (10) 

 Although I reluctantly conclude that, based upon our prior law, the trial court
technically erred in expanding the application paragraph to include the potential for finding
appellant guilty of DWI based upon his intoxication due to substances other than alcohol, I
would take the opportunity to overrule Garcia and hold that henceforth the State need allege,
in its charging instrument, only that the defendant drove or operated a motor vehicle in a
public place while intoxicated. It need not allege any specific substance that caused the
defendant to become intoxicated, but if it does do so, it must prove that the specifically
alleged substance was the cause of the intoxication.

III.


 I also agree with appellant that the "synergistic effect" instruction given in this case
is not part of the "law" applicable to a criminal case and should not be given as a jury
instruction. The attorneys may argue this very statement, in these very words, as a common
sense proposition if it is based upon the evidence presented. However, the judge may not set
out in his jury instructions statements that are subject to proof by evidence, but which do not
form part of the statutory law of this state. Once again, the trial judge, as well as the State,
acted in complete good faith in following this Court's prior decisions which had approved
this very instruction. I cannot fault him at all, and I cannot fault the majority for following
precedent, but I think that we should take the opportunity to correct our own past mistakes.

 We recently held that "Texas courts are forbidden from instructing the jury on any
presumption or evidentiary sufficiency rule that does not have a statutory basis." (11)
 And we
based that holding on our discussion in Browning v. State:

 In any given case the jury could make any number of reasonable inferences.
But when the trial court, the only source of law the jury has, picks out only one
such inference and instructs the jury that that one, though rebuttable, is a
presumption provided by law, the court gives the force of law to that one
possible inference. In fact neither statute nor caselaw provides such a
"presumption" at the trial level. Instructing the jury that it does constitutes, in
effect, a comment on the weight of the evidence. We do not hold that the jury
may not make such an inference, nor that an appellate court in reviewing the
sufficiency of the evidence may not assume that the jury made such a
reasonable inference. The error lies in instructing the jury that they may apply
such an inference. (12)


The "synergistic effect" instruction in this case is just like the instructions this Court
condemned in Brown and Browning. It is not part of the law applicable to the case, and it
is a comment on the weight of the evidence. I think that it is error.

 Let us look at the logic involved. Do trial judges always give this jury instruction as
part of the law applicable to a DWI case? No. This instruction has nothing to do with the
statutes relating to intoxication or driving while intoxicated. It has to do with the specific
evidence admitted at trial.

 Suppose the defendant testified that he ate three M&Ms with his two glasses of beer. 
Would the trial judge then be required or permitted to give this same instruction but
substitute the phrase "M&Ms" for the phrase "Respiratol, Zoloft, Klonopin, and/or Depical"? 
 No. Would the attorneys be able to argue "synergistic effect"? No. There is no evidence
that M&Ms cause a "synergistic effect" when combined with alcohol. It takes scientific
evidence to support a possible conclusion that X substance, when combined with Y
substance, causes a synergistic effect upon the body, making the effect of Y substance more
pronounced than it otherwise would have been.

 Suppose an expert witness testifies, as the State's chemist did in this case, that
Respiratol (or M&Ms or whatever), when combined with alcohol, creates a synergistic effect. 
Now there is evidence in the record that supports a possible inference that the defendant
experienced greater effects from the alcohol that he consumed than he would have otherwise. 
Does that mean when any expert testifies to a scientific "fact" or "opinion" that the trial
judge is required or permitted to instruct the jury that the expert's testimony is the law
applicable to the case? No. If the Defendant should call an expert who testifies that
Respiratol has a reverse synergistic effect-i.e., a person who takes Respiratol is less
susceptible to the effects of alcohol than one who is not taking Respiratol- should the trial
judge instruct the jury in the converse? No. What is the logic of singling out one portion of
one witness's testimony and instructing the jury that a specific portion of that witness's
testimony is "the law applicable to the case"? I see no logic in this position, but there is
considerable mischief lurking here.

 Why, then, do we condone it? It's been done before. In Sutton v. State, a plurality of
this Court said the trial court did not err in giving this "synergistic effect" instruction because
... it had been done before in Heard v. State. (13) And in Heard v. State, this Court held that the
instruction was proper because .... it had been done before in Kessler v. State. (14) But, in fact,
it had not been done before in Kessler. Instead, the DWI defendant in that case had asked
for the reverse instruction: "that if she was intoxicated on the night in question from the
combined use of amytal and whiskey to acquit her." (15) This Court appropriately rejected her
claim for such an instruction, reasoning that If she indulged in the use of amytal to such an extent that she thereby made
herself more susceptible to the influence of intoxicating liquor than she
otherwise would have been and by reason thereof became intoxicated from the
recent use of ardent spirits, she would be in the same position as though her
intoxication was produced by the use of whisky alone. A person who gets
himself in a condition whereby he may become intoxicated from a lesser
quantity of whisky than it would ordinarily take to produce intoxication is
nevertheless intoxicated from the use of whisky.
 We note, however, that the court in his main charge instructed the jury that
if they believed from the evidence that appellant was drunk from the use of
amytal, or if they had a reasonable doubt thereof, to acquit her. This was all
she was entitled to. (16)


Somehow, in the forty-five years between Kessler and Heard, this Court's discussion and
logical reasoning in the former case became transmogrified into a legal jury instruction in the
latter case. But we should not continue to accept, in perpetuity, the illogical proposition that
a snippet of an expert witness's testimony-or the common-sense conclusion that can be
drawn from that testimony-becomes the "law applicable to the case" simply because one case
went wrong a long time ago. 

 We recently explained in Brown that under our Texas adversarial system, "the judge
is a neutral arbiter between the advocates; he is the instructor in the law to the jury." (17) But
he cannot comment on the weight of the evidence, or instruct the jury on conclusions that
they may draw from the evidence, regardless of how common-sensical or logically obvious
those conclusions might be. That is the job of the jurors, aided by the testimony of the
witnesses, and the arguments of the attorneys. 

 Therefore, I would overrule Sutton and hold that the trial court, although acting in
good faith reliance upon our prior precedent, erred in this case in giving a jury instruction
that is not part of the statutory law applicable to DWI. Although the attorneys for the State
and defense may certainly argue the logical proposition of a "synergistic effect" (or lack
thereof) of various substances upon one's mental or physical faculties, a trial judge errs by
instructing the jury on the significance of any witness's opinion testimony as if that testimony
were the law applicable to the case.

 I would remand this case to the court of appeals to assess the harmfulness of the
improper jury instruction and application paragraph.

Cochran, J.

Filed: December 15, 2004

Publish
1. 747 S.W.2d 379 (Tex. Crim. App. 1988).
2. 899 S.W.2d 682 (Tex. Crim. App. 1995) (plurality op.).
3. Garcia, 747 S.W.2d at 381.
4. Act of June 19, 1993, 63
rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3699. See
Tex. Code Crim. Proc. art. 49.01(2)(A).
5. South Dakota v. Neville, 459 U.S. 553, 558 (1983) ("[t]he situation underlying this case
-- that of the drunk driver -- occurs with tragic frequency on our Nation's highways. The carnage
caused by drunk drivers is well documented and needs no detailed recitation here. This Court,
although not having the daily contact with the problem that the state courts have, has repeatedly
lamented the tragedy").
6. See Burrell v. State, 526 S.W.2d 799, 802 (Tex. Crim. App. 1975) ("allegations not
essential to constitute the offense, and which might be entirely omitted without affecting the
charge against the defendant, and without detriment to the indictment are treated as mere
surplusage, and may be entirely disregarded ...[except when] "the unnecessary matter is
descriptive of that which is legally essential to charge a crime").
7. Thomas v. State, 621 S.W.2d 158, 161 (Tex. Crim. App. 1981) (op. on reh'g).
8. See id.
9. 108 S.W.3d 311, 313 (Tex. Crim. App. 2003) (stating that "it is unreasonable to require
that the indictment contain more than the essential elements of the offense. ... If a defendant files
a motion alleging lack of notice to defend and asking for specific information concerning the
alleged offense, the trial court should determine whether, based on reasonable, common sense
evaluation of the charges, such notice is necessary to prepare a defense. If it is, the court should
order the State to provide reasonable notice, preferably in a written document filed with the court
... or orally on the record").
10. See, e.g., State v. Cordell, 34 S.W.3d 719, 721-22 (Tex. App. - Fort Worth 2000, pet.
ref'd) (reversing trial court's order quashing information for failing to allege which specific
substance allegedly caused defendant's intoxication in DWI case; noting that, without such
specificity, "a defendant may be deprived of a particular theory of defense, e.g., 'I ingested
alcohol and heroin, not alcohol and amphetamine, as alleged in the information,'" but a
defendant is not precluded from presenting a defense that she was not intoxicated on any
substance).
11. Brown v. State, 122 S.W.3d 794, 799 (Tex. Crim. App. 2003). In Brown, we
explained:

 both appellate and trial courts may measure the sufficiency of evidence by resort
to a judicial presumption, but the jury cannot be told of that presumption or rule.
For example, the presumption of an intent to commit theft arises from the
nonconsensual nighttime entry of a home or building. But an instruction to the
jury on this legal "presumption" is an improper comment on the weight of the
evidence.

Id. at 800 (footnotes omitted).


12. Browning v. State, 720 S.W.2d 504, 507 (Tex. Crim. App. 1986).
13. Sutton, 899 S.W.2d at 684 (citing Heard v. State, 665 S.W.2d 488, 490 (Tex. Crim.
App. 1984).
14. Heard, 665 S.W.2d at 489-90 (citing Kessler v. State, 136 Tex. Crim. 340, 125 S.W.2d
308, 309 (1939)).
15. Kessler, 125 S.W.2d at 309.
16. Id. At the time Kessler was decided, the general DWI statute, article 802 of the 1923
Penal Code, covered only driving "under the influence of intoxicating liquor." 
17. 122 S.W.3d at 797.