COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.  2-04-549-CR

 

 

J.D. JORDAN                                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 89TH DISTRICT COURT OF WICHITA COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                            Introduction








Appellant J.D. Jordan had a
shootout with Wichita Falls Police officers in the living room of the home from
which Appellant was dealing drugs. 
Appellant shot two of the officers and came so close to shooting a third
that the bullet passed through the officer=s clothes before Appellant ran out of bullets and surrendered.  A jury convicted him on six counts of
attempted capital murderCone for each
of the four officers who actually entered the house during the gun battle, and
one for each of two officers who remained outsideCand assessed punishment at life in prison for each count.  On appeal, Appellant argues that the evidence
is legally and factually insufficient to prove (1) that he knew that the six
complainants were peace officers and (2) that he intended to kill the two
officers who remained outside the house. 
We affirm.

                                       Standard of Review

In reviewing the legal
sufficiency of the evidence to support a conviction, we view all the evidence in
the light most favorable to the verdict in order to determine whether any
rational trier of fact could have found the essential elements of the crime
beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Hampton v.
State, 165 S.W.3d 691, 693 (Tex. Crim. App. 2005).








In reviewing the factual
sufficiency of the evidence to support a conviction, we are to view all the
evidence in a neutral light, favoring neither party.  See Zuniga v. State, 144 S.W.3d 477,
481 (Tex. Crim. App. 2004).  The only
question to be answered in a factual sufficiency review is whether, considering
the evidence in a neutral light, the fact finder was rationally justified in
finding guilt beyond a reasonable doubt. 
Id. at 484.  There are two
ways evidence may be factually insufficient: 
(1) when the evidence supporting the verdict, considered by itself, is
too weak to support the finding of guilt beyond a reasonable doubt; or (2) when
there is evidence both supporting and contradicting the verdict or judgment
and, weighing all of the evidence, the contrary evidence is so strong that
guilt cannot be proven beyond a reasonable doubt.  Id. at 484-85.  AThis standard acknowledges that evidence of guilt can >preponderate= in favor of
conviction but still be insufficient to prove the elements of the crime beyond
a reasonable doubt.@  Id. at 485.  In other words, evidence supporting a guilty
finding can outweigh the contrary proof but still be insufficient to prove the
elements of an offense beyond a reasonable doubt.  Id.  
       In performing a factual
sufficiency review, we are to give deference to the fact finder=s determinations, including determinations involving the credibility
and demeanor of witnesses.  Id. at
481; Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997).  We may not substitute our judgment for the
fact finder=s.  Zuniga, 144 S.W.3d at 482.  

A proper factual sufficiency
review requires an examination of all the evidence.  Id. at 484, 486-87.  An opinion addressing factual sufficiency
must include a discussion of the most important and relevant evidence that
supports the appellant=s complaint
on appeal.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).

                                   Summary of the Evidence








Wichita Falls Police Officer
Scott Poole, a narcotics investigator, testified that he obtained a
knock-and-announce search warrant for Appellant=s home after an informant reported that Appellant was selling
marijuana.  Six officers traveled to
Appellant=s house to
execute the warrant: Poole, Karl King, Chris Taylor, Justin Whisenhunt, Larry
Robinette, and Kevin Folmar.[2]  Poole testified that he was wearing a
department-issued police ball cap, a police Araid@ jacket, and
a bullet-resistant vest.  The cap was
imprinted with the word Apolice@ on the front, and the raid jacket had the word Apolice@ printed on
the front and back and a police badge printed on the front.  Officer Poole said that when the officers
approached the front door of the house, he opened the screen door, knocked
loudly on the wooden door, and yelled, A[P]olice, search warrant.@ Officer Poole testified that there was no response, so he knocked and
announced a second and a third time. 
After a few more seconds, Officer Taylor knocked open the door with two
hits from a battering ram.  Officer Poole
waited a few seconds for his eyes to adjust from the bright sunlight outside to
the relative darkness inside the house, then stepped slowly into the house
while shouting, A[P]olice,
search warrant.@  As he stepped around the open door, he heard
two gunshots, and a bullet hit him in the shoulder.  Officer Poole immediately backed out of the
door and onto the porch. 








Officer King testified that
Officer Poole waited at least fifteen seconds after banging on the front door
and announcing, APolice,
search warrant, open the door@ before he instructed Officer Taylor to breach the door.  He said that he entered the house just behind
Officer Poole.  When Officer Poole was
shot, Officer King passed him, and a bullet grazed Officer King=s ear.  Officer King saw the arm
of a man shooting a revolver from the home=s hallway and returned fire. 
Officer King testified that during the ensuing gun battle, Appellant
said, AI give up, I give up, I=m going to give you my gun@Cand then fired two more shots at the officers.  

Officer Taylor testified that
he ran into the house behind Officer King when the shooting started.  He was wearing a raid jacket like Officer
Poole=s and testified that all of the officers were similarly dressed.  He said the lights were off in the living
room, but it was Afairly
bright inside@ from
sunlight. Officer Taylor fired all of the rounds in his weapon, then stepped
outside to reload during a lull in the gunfight.  When he re-entered the house, he heard
Appellant say, AMy son=s in here, my son=s in here.@  Officer Taylor told Appellant to drop his
weapon; a moment later, Appellant tossed his gun into the living room and
walked out from the hallway. 








Officer Robinette testified
that he followed Officer Taylor into the house. 
He said sunlight was streaming in though the blinds in the living room
and he could see Appellant clearly. 
During the firefight, Officer Robinette and the other officers continued
to yell that they were police.  After
Appellant surrendered, Officer Robinette realized that a bullet had passed
through his clothing but missed his body. 

Officer Whisenhunt testified
that he was on his way into the house when Officer Poole came back out and
collapsed on the porch.  He stopped to
assist Officer Poole, and a bullet fired from inside the house broke a window a
few feet away from them and to the right of the front door.  He testified that he and Officer Poole Amost likely would have been visible through that window.@ 

Officer Folmar testified that
Officer Poole knocked and announced for twenty to twenty-five seconds before
instructing Officer Taylor to breach the door, and that Officer Poole has a
very loud voice that could have been heard throughout the house.  Officer Folmar took up a position at a window
to the left of the front door when the shooting started, and a bullet broke the
window where he was standing. 

Appellant=s son testified that he returned home from school thirty minutes
before the gunfight.  He said that he was
playing a computer game when Appellant entered his bedroom and said, Ason, the cops are here.@  Appellant left the bedroom,
closing the door behind him.  His son
heard an indistinct yell from a voice he did not recognize, and then the
shooting started.  He heard Appellant
yell, AMy son=s in there.@  When the shooting stopped, a
police officer escorted Appellant=s son out of the house and handcuffed him.  













Appellant testified in his
own defense.  Appellant said that he was
worried that his drug-dealing associates or customers were coming to Atake my drugs and money away.@  He testified that he was
dozing on a love seat in the living room when he heard someone open the house=s storm door.  He looked out the
front door=s peephole,
grabbed his gun, and went to his son=s bedroom. Appellant did not recall telling his son Athe cops were there,@ but admitted that it was possible. 
Appellant stated that he did not hear anyone saying anything. He heard
the front door burst open.  He looked
around the corner into the living room and saw a man standing there.  Appellant testified, AI suppose it was [Officer] Poole . . . but when he came in his cap was
on backwards -- I noticed that -- and . . . both of us had our eyes locked on
one another.@  Appellant said they stared at each other with
their guns pointed at one another for a few seconds, and then the shooting
started.  Appellant testified, AI=m not going
to say I didn=t fire the
first shot, I don=t know if I
did or didn=t.@  When asked whether he said he
would give up and then fired two more shots, Appellant testified, AI=m not going
to say I didn=t, I ain=t going to say I did, because I really don=t know.@  Appellant said that he Afelt like . . . it had to be the cops@ when he saw Aa woman
standing there.@[3]  Appellant testified that
someone said, AThrow your
gun down,@ and he
complied.

On cross-examination,
Appellant admitted that, on the day of the gunfight, he gave police a statement[4]
in which he said that he realized that his adversaries were police A[s]omewhere in the middle of the shooting@ and that he continued to fire his gun after coming to that
realization.  Appellant agreed that the
officers were wearing raid jackets as described by Officers Poole and
Taylor.  Appellant admitted that he told
police in his statement that he had expected the police to arrest him as early
as the night before the gunfight. 

In the State=s rebuttal case, Officer Poole testified that he was wearing his cap
with the police insignia facing forward when he entered the house. 

                                             Discussion








A person commits the offense
of capital murder if the person intentionally or knowingly causes the death of
a peace officer acting in the lawful discharge of an official duty and whom the
person knows is a peace officer.  Tex. Penal Code Ann. ''19.02(b) (Vernon 2003), 19.03(a) (Vernon Supp. 2005).  A person commits the offense of attempted
capital murder if, with specific intent to commit capital murder, he does an
act amounting to more than mere preparation that tends but fails to effect the
commission of capital murder.  Id.
' 15.01(a) (Vernon 2003).

In each of his six issues,
Appellant argues that the evidence is legally and factually insufficient to
prove beyond a reasonable doubt that he knew that each individual officer was a
peace officer.  In his fourth and fifth
issues, he also argues that the evidence is legally and factually insufficient
to prove beyond a reasonable doubt that he intended to kill Officers Folmar and
Whisenhunt.  Except for these specific
elements, Appellant concedes that the evidence is legally and factually
sufficient to support the jury=s verdict.








Viewed in the light most
favorable to the verdict, the evidence shows that Appellant expected the police
to come and arrest him; that the officers knocked and announced their presence
several times before battering down Appellant=s door; that their clothing was distinctive and emblazoned with the
word Apolice@ and police
emblems; that they continued to identify themselves as police officers
throughout the fight; that although the lights were off in the living room, it
was nonetheless light enough for Appellant, in his own words, to Alock eyes@ with
Officer Poole before shooting him; and that Appellant knew they were police
officers even before they entered the house because he told his son, Athe cops are here.@  We hold that the evidence is
therefore legally sufficient to permit a jury to conclude beyond a reasonable
doubt that Appellant knew that the officers were peace officers.   Considering the evidence in a neutral light,
we hold that it was also factually sufficient. 
We therefore overrule Appellant=s first, second, third, and sixth issues, and overrule his fourth and
fifth issues in part.

With regard to whether
Appellant intended to kill Officers Folmar and Whisenhunt, the two officers who
did not enter the house during the shootout, we note that the question of
intent to kill is a question of fact for the jury.  Brown v. State, 122 S.W.3d 794, 800
(Tex. Crim App. 2003), cert. denied, 541 U.S. 938 (2004).  The jury may infer the intent to kill from
the perpetrator=s use of a
deadly weapon, unless it would be unreasonable to infer that death or serious
bodily injury could result from the use of the weapon.  Id. at 800.








The evidence showed that
bullets fired from within the house penetrated the two windows near which the
officers took positions during the fight. 
The facts that Appellant shot repeatedly at the officers who entered the
house and managed to hit two and nearly hit one of them strongly suggests that
Appellant intended to shoot all of the officers.  We hold that a rational trier of fact could
conclude beyond a reasonable doubt that Appellant intended to kill Officers Folmar
and Whisenhunt.  The evidence of his
intent to kill was therefore legally sufficient.  Viewed in a neutral light, we cannot say that
the evidence supporting the verdict, considered by itself, is too weak to
support the finding of intent beyond a reasonable doubt, nor that the contrary
evidence is so strong that intent cannot be proven beyond a reasonable
doubt.  Thus, the evidence was also
factually sufficient.  We therefore
overrule the remainder of Appellant=s fourth and fifth issues.

                                             Conclusion

Having overruled all six of
Appellant=s issues, we
affirm the trial court=s judgment.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  June 29, 2006











[1]See Tex. R. App. P. 47.4.





[2]Officer
Poole testified that Amy Preston, a college student intern, accompanied the
officers. 





[3]The
record does not reflect the presence of any woman other than Amy Preston, the
student intern, at the scene during the gun battle, and Officers King and
Robinette testified that Preston stayed in Officer Robinette=s car
during the entire incident.





[4]The
statement itself was not offered into evidence.