[COMMENT1] 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.  2-07-430-CR

 

 

RODNEY DICK HELM, JR.                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 

                                              ------------

Rodney
Dick Helm, Jr. appeals from his conviction for driving while intoxicated (ADWI@).  In three points, he complains that the trial
court erred by overruling his objection to a jury charge instruction, that the
trial court abused its discretion by overruling his motion for new trial
complaining of that jury instruction, and that the improper jury instruction
harmed him.  The State agrees that the
trial court erred by giving the improper jury instruction but argues the error
was harmless.  We affirm.








                                                 Facts

While
waiting at a stop sign, Officer Ismael Espinoza of the Fort Worth Police
Department observed Appellant turn in front of another truck, which had to slam
on its brakes to avoid a collision and skidded. 
Officer Espinoza considered the turn dangerous.  Appellant drove past Officer Espinoza and into
the parking lot of a striptease bar. 
Officer Espinoza then made a u-turn and followed Appellant into the lot.  His overhead lights were not on.  He parked behind Appellant and saw Appellant Amoving
something or placing something or possibly retrieving something@ on his
vehicle=s
floorboard.  Appellant exited his truck
and walked toward the bar=s entrance, swaying and not
acknowledging Officer Espinoza=s
presence.

Officer
Espinoza exited his car, approached Appellant, and detected an odor of alcohol
about his person.  He placed Appellant in
the back of his squad car, in the confined space of which the smell of alcohol
on Appellant=s breath was much stronger.  Appellant admitted that he had been drinking;
he said he had consumed Amaybe two@
drinks.  Officer Espinoza found a
750-milliliter bottle of whiskey on the floor of Appellant=s truck,
and the bottle was 80% empty.  Appellant=s speech
was Aa little
bit slurred.@ 








Officer
Espinoza was not trained to administer field sobriety tests, so he called for
backup.  Sergeant Weldon Norman responded
to the call.  Appellant told him Aright
off the bat that he wasn=t going to take any field sobriety
tests@ before
Sergeant Norman had even spoken to him. 
Sergeant Norman then administered the HGN test, and Appellant exhibited
four out of six clues of intoxication. 
Appellant=s eyes were Aa little
bloodshot.@ 

Officer
Espinoza arrested Appellant for driving while intoxicated.  He transported Appellant to the jail and gave
him the DIC 24 warning.  Appellant
refused to provide a breath specimen. 

Appellant
points out that there were no police video cameras in either patrol vehicle;
therefore, the only evidence of the events leading up to and including the
arrest is the officers= testimony.  Also, a video recording of Appellant and his
actions at the city jail was admitted and published to the jury.

The
trial court instructed the jury, over Appellant=s
objection, that A[y]ou are instructed that you
may consider the defendant=s breath
test refusal as evidence in this case.@  The jury convicted Appellant, and the trial
court sentenced him to ninety days=
confinement in the Tarrant County Jail and a fine of $550, with the confinement
portion of the sentence probated for twenty-four months.

                           The trial court=s
instruction was error








In Hess
v. State, this court held that it was error for a trial court to give an
instruction identical to the one in this case. 
224 S.W.3d 511, 515 (Tex. App.CFort
Worth 2007, pet. ref=d).  In Bartlett v. State, the Texas Court
of Criminal Appeals, citing our Hess opinion, recently explained,

A judicial instruction
that singles out a particular piece of evidence, but does not serve one of the
legally authorized purposes set out above, risks impinging upon the Aindependence of the jury
in its role as trier of the facts, a role long regarded by Texans as essential
to the preservation of their liberties.@  Even a
seemingly neutral instruction may constitute an impermissible comment on the
weight of the evidence because such an instruction singles out that particular
piece of evidence for special attention. 
In the instant case, the question is whether the trial court=s seemingly neutral
explanation of the law with respect to the admissibility of the refusal to take
a breath test constituted such an impermissible comment.

 

270 S.W.3d 147, 151B52 (Tex. Crim. App. 2008)
(citations omitted).

 

The Bartlett
court explained that there are three situations when a trial court may properly
comment on a specific item of evidence:








First, the trial court
may specifically instruct the jury when the law directs it to attach a certain
degree of weight, or only a particular or limited significance, to a specific
category or item of evidence, [such as accomplice testimony under article 38.14
of the code of criminal procedure or evidence admitted for a limited purpose
under rule 105 of the Texas Rules of Evidence]. 
Second, the Legislature has expressly required the trial court to call particular
attention to specific evidence in the jury charge when the law specifically
identifies it as a predicate fact from which a jury may presume the existence
of an ultimate or elemental fact. . . . Under section 22.05(c) [of
the Penal Code, the deadly‑conduct statute], recklessness and danger, two
separate elements of the offense of deadly conduct, may each be presumed if a
person knowingly points a firearm at or in the direction of another.  Third, the trial court may instruct the jury
with respect to evidence that is admissible contingent upon certain predicate
facts that it is up to the jury to decide. 
For example, when the law specifically assigns to jurors the task of
deciding whether certain evidence may be considered, as it does under Article 38.23
of the Code of Criminal Procedure, it is essential that jurors be told exactly
what evidence is in question [before] they can[] pass upon its admissibility.

 

Id. at 151
(citations and quotation marks omitted).

These
are the only three circumstances under which the law authorizes singling out
particular evidence in the jury instruction. 
Instructing the jury about the refusal to take a breath test does not
fall within any of these three exceptions. 
As the State candidly concedes, the trial court clearly erred in
instructing the jury that it could consider Appellant=s
refusal to take a breath test.  We
sustain Appellant=s first issue.

                                    The error
was harmless








Having
determined that there was error in the charge, we now must decide if sufficient
harm was caused by the error to require a reversal.  See Hutch v. State, 922 S.W.2d 166,
170B71 (Tex.
Crim. App.1996).  The standard to
determine whether sufficient harm resulted from the charging error to require
reversal depends upon whether the Appellant objected.  See Olivas v. State, 202 S.W.3d 137,
144 (Tex. Crim. App. 2006) (interpreting Almanza v. State, 686 S.W.2d
157 (Tex. Crim. App. 1985) (op. on reh=g)).  When the Appellant has made a timely
objection at trial, as Appellant has in this case, an appellate court will
search only for Asome harm.@  Abdnor v. State, 871 S.W.2d 726, 732
(Tex. Crim. App. 1994).  In other words,
a properly preserved error will require reversal as long as the error is not
harmless.  Almanza, 686 S.W.2d at
171.  In making this determination, Athe
actual degree of harm must be assayed in light of the entire jury charge, the
state of the evidence, including the contested issues and weight of probative
evidence, the argument of counsel and any other relevant information revealed
by the record of the trial as a whole.@  Id.; see also Hutch, 922 S.W.2d
at 171; Hess, 224 S.W.3d at 516B17.








After
reviewing the entire jury charge, the state of the evidence, and the arguments
of counsel, we hold that the instruction in this case, albeit improper, was not
harmful to Appellant.  Absent the
instruction in question, the charge is wholly unexceptional.  It contains no other erroneous or
questionable sections, and the application paragraph properly instructs the
jury to find Appellant guilty if Ayou find
from the evidence beyond a reasonable doubt that in Tarrant County, Texas, on
or about the 18th day of September, 2006, the defendant, Rodney Dick Helm, Jr.,
did then and there operate a motor vehicle in a public place while . . .
intoxicated.@ 
See Tex. Penal Code Ann. ' 49.04
(Vernon 2003).  The charge then states A[u]nless
you do so find beyond a reasonable doubt or if you have a reasonable doubt
thereof, you will acquit the defendant and say by your verdict, not guilty.@  The charge also properly defined intoxication
to mean Anot
having the normal use of one=s mental
or physical faculties by reason of the introduction of alcohol into the body.@  See Tex. Penal Code Ann. '
49.01(2)(A).  Assuming, as we must, that
the jury followed the instructions of the trial court, Colburn v. State,
966 S.W.2d 511, 520 (Tex. Crim. App. 1998), we cannot say that the erroneous
instruction reduced the State=s burden
of proof in any way.

The
weight of the probative evidence militates against harm, too.  See Almanza, 686 S.W.2d at 171.  Appellant turned in front of an oncoming
vehicle, almost causing a wreck that was averted only because the other vehicle
slammed on its brakes.  His breath smelled
of alcohol, his eyes were bloodshot, his speech was slurred, and he swayed when
he walked.  Officer Espinoza saw him
place something on the floor of his vehicle, which the jury could have
reasonably concluded was the mostly-empty whiskey bottle.  Appellant exhibited four clues of
intoxication on the HGN test, and he refused to take other field sobriety tests
or submit a breath sample.  Evidence
favorable to Appellant=s defense is the video made at
the jail, in which he does not exhibit obvious signs of intoxication, though he
does sway back and forth.  While this is
not a Aslam-dunk,
falling-down drunk@ type of case, we cannot say,
given the weight of the evidence as a whole, that the court=s
instruction harmed Appellant.  See
Hess, 224 S.W.3d at 516.








Additionally,
once the trial court admitted testimony regarding Appellant=s
refusal to take the breath test, both parties were free to argue that fact to
the jury.  See Wesbrook v. State,
29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied, 532 U.S. 944
(2001); Hess, 224 S.W.3d at 516. 
Accordingly, the State argued, ADon=t you
think if he wasn=t intoxicated, he would have
[submitted to additional testing]?@  Appellant=s
counsel pointed out that a suspect does not have to submit to a breath test,
but conceded that the jury could consider the fact that he refused to
submit.  Therefore, the jury did not need
any judicial instruction to focus its attention on the refused test.  See Brown v. State, 122 S.W.3d 794,
803 (Tex. Crim. App. 2003); Hess, 224 S.W.3d at 517.  Although the State referred to Appellant=s
refusal three times during its closing, the record demonstrates that the
prosecution did not emphasize the court=s
instruction, focus the jury=s
attention on that instruction, or exploit the instruction by placing the weight
of the trial court behind it.  See
Hess, 224 S.W.3d at 511. 
Accordingly, we hold that the instruction was harmless under the facts
of this case, and we overrule Appellant=s third
issue.  We also overrule his second
issue, in which he argues that the trial court erred by failing to grant him a
new trial based on the trial court=s
erroneous charge instruction.








                                             Conclusion

Having
concluded that the trial court erred by specifically instructing the jury that
it could consider Appellant=s
refusal to a breath test but further concluding that the error was harmless
under the evidence and circumstances of this case, we affirm the trial court=s
judgment.

 

ANNE GARDNER

JUSTICE

 

PANEL: 
DAUPHINOT, GARDNER, and WALKER, JJ.

 

DAUPHINOT, J. filed a dissenting opinion.

 

PUBLISH

 

DELIVERED: 
August 31, 2009

 











 
 
 
 
 
 
 




 

 

 

 

 

 

                                               COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.  2-07-430-CR

 

 

RODNEY DICK HELM, JR.                                                      APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

        FROM COUNTY CRIMINAL COURT NO. 7 OF TARRANT COUNTY

 

                                              ------------

 

                                   DISSENTING OPINION

 

                                              ------------

Because
I believe that Appellant suffered some harm from the erroneous jury
instruction, I dissent.

The
majority accurately sets out the underlying facts of the case and
conscientiously analyzes the applicable law as applied to those facts.  I must disagree, however, with the majority=s
interpretation of those facts.








Under
the Almanza analysis, A[i]f the
error in the charge was the subject of a timely objection in the trial court,
then reversal is required if the error is >calculated
to injure the rights of defendant,= which
means no more than that there must be some harm to the accused from the
error.@[1]  Because Appellant timely objected to the
charge error, in determining whether some harm exists, this court must review
the entire jury charge, the evidence, the jury argument, and Aany
other relevant information revealed by the record of the trial as a whole.@[2]

Although
it is true that Officer Espinoza said that Appellant made an unlawful turn, he
also testified that when Appellant turned left, the other truck was a little Aless
than a block@ away.  If the approaching truck had to skid and
cause its brakes to screech, it could only be because it was approaching at an
excessive speed.  Under ordinary
circumstances, there is ample time to turn in front of a vehicle that is a
little Aless
than a block@ away.








Additionally,
Officer Espinoza did not decide to pull Appellant over until he saw Appellant
pull into the parking lot of a strip club. 
Even then, Officer Espinoza did not turn on his overhead lights, and, in
fact, he did not do the things an officer normally does when giving a ticket,
nor did he give Appellant a ticket.  The
officer instead placed Appellant in the cage in the back of his police
unit.  Although Officer Espinoza claimed
that he saw Appellant sway as he walked, there was no sway evident in the video
taken at the police station roughly an hour after the arrest.  Although the officer said that he smelled
alcohol about Appellant=s person, it was not until he
had placed Appellant in the unit that he was able to determine that the odor of
alcohol was Aa lot stronger.@

Without
advising Appellant of any of the required warnings, the officer began to
question him.  Leaving Appellant in the
back seat of the unit, from which Appellant could not exit, the officer
searched Appellant=s truck, which was lawfully
parked in the parking lot.  It was only
then that the officer decided that Appellant=s speech
was Aa little
bit slurred.@

There
was no indication that the officer was concerned for his safety.  Rather, he was searching for evidence.  As the Gant court pointed out, a
person secured in the back seat of a police unit cannot reach any weapon in his
own vehicle.  An officer, therefore, is
not justified in searching an empty vehicle on the basis of the officer=s
safety.[3]  At no time was Appellant allowed to return to
his truck.








Appellant
was seized and put into the cage of the police unit, with doors that would not
open from the inside, before the officer detected a strong odor of alcohol,
before he learned that Appellant had had two drinks, and before he unlawfully
searched Appellant=s truck and found alcohol.  There was no field sobriety test.  Neither officer had a functioning video
camera in his unit.  The only evidence of
Appellant=s conduct at the scene of the
arrest was the testimony of the police officers.  Other than Officer Espinoza=s
testimony that Appellant turned improperly, there was no evidence of impaired
driving.

After
Officer Norman arrived, he performed an HGN test that showed some nystagmus, which
Norman characterized as Aclues of intoxication.@  Appellant=s eyes
were also Aa little bloodshot.@  Appellant did not perform any other field
sobriety tests.








Although
there is no visual record of Appellant=s
demeanor at the scene of the arrest, there is a DVD of his demeanor in the
police station.  The DVD reveals that
Appellant=s speech was not slurred, he did
not sway when he walked, he was steady on his feet, he was able to follow the
written and oral warnings, and he repeatedly and clearly stated that he would
not submit to any testing until his attorney arrived.  He repeatedly requested that his attorney be
present.  Once a suspect has invoked his
Fifth Amendment right to counsel, police interrogation must cease until counsel
has been provided or the suspect himself reinitiates a dialogue.[4]  Yet the officers did not stop their attempts
to question Appellant and continued to ask him to perform field sobriety tests
and to submit a breath sample.  I know of
no rule of law that excepts DWI offenses from the mandate of the Fifth
Amendment to the Constitution of the United States and Edwards v. Arizona.[5]

The
jury, then, was presented with the fruit of an unlawful search, the fruit of
unlawful questioning, no objective evidence in the form of on-scene videos, an
HGN test, a video taken at the police station that indicated that Appellant had
the normal use of his mental and physical faculties, and a jury instruction
that singled out the breath-test refusal as evidence that the jury could
consider.

In final
argument, the prosecutors emphasized Appellant=s
refusal of the tests at the time of arrest. 
At one point, the prosecutor said, 

And he, again, refuses
everything.  And if you also notice on
the tape, in the middle of nowhere, he says, AOkay, I=m good.@  And then he=s offered a breath test,
and he says No.  He refuses everything.

 

And again,

 

He refused
everything.  Don=t you think if he wasn=t intoxicated, he would
have done something?  No, he did
absolutely nothing and the defense counsel wants to fault us for that and tell
us that we don=t have enough evidence
because the defendant refused everything. 

 








And yet
again, AHe
refuses everything.  And what does he
say?  My attorney told me not to do
anything unless he was here.@ 

In
determining that the charge error was harmless, the majority relies, in part,
on improperly admitted evidence. 
Admittedly, defense counsel lodged not a single objection during trial,
except for the objection to the jury instruction.  While it is proper to rely on improperly
admitted evidence in conducting a sufficiency review,[6]
it is not proper to rely on improperly admitted evidence in determining that
the evidence of guilt was of such magnitude that the degree of harm caused by
the improper jury instruction was outweighed by the quantum of the evidence of
guilt.  If that were the standard,
cumulative error could outweigh the harm caused by charge error, rendering the
charge error harmless in comparison to the other error in the case.  Whether the charge error is harmless relative
to the other error in the case is not the standard for reversal based on jury
charge error.[7]








The
trial court=s instruction singling out the
evidence of Appellant=s refusal to submit to a breath
test was an improper comment on the weight of that evidence.  The prosecutor=s
argument magnified the injury that Appellant suffered as a result of the trial
court=s
error.  Additionally, both the jury
instruction and the State=s argument implicate Appellant=s
invocation of his right to counsel.  Appellant=s
refusal was conditioned on his attorney=s
absence and his reliance on his attorney=s
instructions.  He voiced this explanation
repeatedly on the video.  The evidence
was at best equivocal on the legality of the stop, the legality of the seizure,
and Appellant=s guilt of the offense.  Appellant therefore suffered some harm from
the improper jury charge.  This court
should therefore sustain Appellant=s second
issue, reverse the trial court=s
judgment, and remand the case to the trial court.  Because the majority does not, I must
respectfully dissent.

 

 

LEE ANN DAUPHINOT                                                               JUSTICE

 

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

 

DELIVERED:  August 31, 2009











[1]Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1984) (op. on reh=g).





[2]Id.; see also Ovalle v.
State, 13 S.W.3d 774, 786 (Tex. Crim. App. 2000).





[3]Arizona v. Gant, 129 S. Ct. 1710, 1716
(2009).





[4]Edwards v. Arizona, 451 U.S. 477, 484B85, 101 S. Ct. 1880, 1884B85 (1981).





[5]See id.; see also U.S.
Const. amend V.





[6]Moff v. State, 131 S.W.3d 485, 489B90 (Tex. Crim. App.
2004).





[7]See Almanza, 686
S.W.2d at 171; see also Ovalle, 13 S.W.3d at 786.















 [COMMENT1]

Majority opinion by Justice Gardner; Dissenting
opinion by Justice Dauphinot