**Opinion filed June 28, 2012**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00156-CR
_____

## LEONARD FOSTER BATTS, JR. A/K/A BO BATTS, Appellant

## V.

## STATE OF TEXAS, Appellee

**On Appeal from the 35th District Court**

**Brown County, Texas**

**Trial Court Cause No. CR19114**

## M E M O R A N D U M   O P I N I O N

The jury convicted Leonard Foster Batts, Jr. a/k/a Bo Batts of engaging in organized criminal activity and assessed his punishment at confinement for forty years. We affirm.

Appellant has briefed seven points of error. In his first point, appellant complains of the admission of hearsay into evidence. In his second point, appellant contends that the testimony of the accomplice witnesses was not sufficiently corroborated. In the third, fourth, and fifth points, appellant challenges the sufficiency of the evidence. In his sixth and seventh points, appellant

complains of errors in the jury charge. We will address the challenges to the sufficiency of the evidence first.

*Sufficiency of the Evidence*

In his third and fourth points, appellant contends that the evidence was insufficient to prove that he delivered at least four grams of methamphetamine to Cheryl McEwen. In his fifth point of error, appellant argues that the evidence was insufficient to prove that he acted in "combination" with at least two other people. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Under TEX. PENAL CODE ANN. § 71.02 (West Supp. 2011), a person commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . , the person commits or conspires to commit" certain offenses, including the "unlawful manufacture, delivery, dispensation, or distribution of a controlled substance." A combination is defined as "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01(a) (West 2011). The indictment in this case alleged that appellant knowingly delivered, by actual or constructive transfer to Cheryl McEwen, between four and 200 grams of methamphetamine on or about October 19, 2006, and that appellant "did then and there commit said offense with the intent to establish, maintain, or participate in a combination or in the profits of a combination who collaborated in carrying on said criminal activity." The jury charge contained the allegations from the indictment and added Sherry Brock as a participant.

The record shows that appellant and Sherry Brock lived together, were heavy methamphetamine users, and sold methamphetamine to support their drug habit. Brock, who had been convicted of the same crime as appellant but was already out on parole by the time appellant was tried, was called by the State and testified at appellant's trial. According to Brock, appellant bought drugs from John and Jesse Burks, with whom Brock was not acquainted. Brock testified

2

that Cheryl McEwen was a customer who bought methamphetamine and cocaine from Brock and appellant daily or every other day for about a month or a month and a half (until Brock learned from McEwen that Lieutenant Tony Aaron of the Brown County Sheriff's Department was out "to get them"). During most of the transactions, appellant would hand the drugs to Brock, and Brock would make the exchange, count the money, and then hand the money to appellant. Brock testified that she and appellant shared in the proceeds of the drug sales. McEwen sometimes purchased an ounce (twenty-eight grams) of methamphetamine, sometimes less, at each transaction. Based on her dealings with McEwen, Brock believed that McEwen was a drug dealer.

McEwen, who was in prison serving a 39-year sentence, also testified at appellant's trial. She testified similarly to Brock with respect to her purchase of drugs, mostly methamphetamine but also some cocaine, from Brock and appellant. McEwen testified that she generally dealt directly with Brock but that appellant was present at all of the transactions. On one occasion, McEwen actually dealt with appellant instead of Brock. McEwen testified that she generally purchased fourteen grams of methamphetamine at a time. She quit purchasing from Brock and appellant after her boyfriend, Clifton Thomas, was arrested near her residence for possessing methamphetamine that he got from McEwen. When Thomas was arrested, he was in possession of 4.15 grams of methamphetamine and a trace amount of cocaine. The drugs seized from Thomas were subsequently tested by the Abilene DPS Crime Lab, and both the lab report and the drugs were admitted into evidence as exhibits at appellant's trial.

As a result of Thomas's arrest, Lieutenant Aaron went to McEwen's house and conducted a search with McEwen's consent. Seized from inside McEwen's house were trace amounts of methamphetamine; a 100-count package of small, "zipper baggies"; a finger scale; a set of police "ten codes"; a bowl scale with residue; a digital scale; more baggies, but even smaller; a list of law enforcement frequencies; a list, written by Brock, of meeting spots between Abilene and Lake Brownwood; and a methamphetamine pipe. The list of meeting spots was handwritten by Brock and given to McEwen in an effort to be more "organized" so that they did not have to type as much when sending a text message about where to meet for their transactions. Lieutenant Aaron also discovered text messages on McEwen's phone from "Sherry and Bo." Lieutenant Aaron sent a message through McEwen to appellant and Brock to quit bringing drugs to Brownwood and to come talk to him because they were about to go to prison. Approximately

two months later, Brock came in and gave a statement to Lieutenant Aaron. Lieutenant Aaron testified that he had obtained information from various sources regarding appellant and Brock supplying narcotics.

McEwen and Brock verified that they sent text messages back and forth on October 17, 18, 19, and 20, 2006, regarding appellant and Brock coming to meet McEwen to deliver drugs.[1] A text message from October 17 at 1:08 a.m. read, "Bo is trying 2 cut out his eyeball. We wil b leavn here after I find him a pirate patch." In the messages sent October 18 at 3:27 a.m. and 4:10 a.m., Brock indicated, "On our way" and "I c lake lites." At that time, appellant and Brock lived in Abilene, and McEwen lived at Lake Brownwood. McEwen testified that appellant and Brock delivered methamphetamine to her house on October 18. She also stated that, for them to make a delivery at her house, the minimum purchase was fourteen grams of methamphetamine. In repetitive text messages sent on the night of October 19 and after midnight on October 20 to McEwen, Brock stated, "U awake? We r ready 2 ride." However, the delivery that was to be made that night was aborted due to Thomas being stopped and arrested and the police going to McEwen's house. The testimony reflects that appellant and Brock made deliveries to McEwen at various places, which included her house, along the road between Brownwood and Abilene, and also in Abilene. The evidence indicates that the amount of methamphetamine sold to McEwen in each delivery was not a "user" amount but, rather, a "dealer" amount.

After reviewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The jury could have found that appellant committed the offense of unlawful delivery of a controlled substance by delivering more than four grams of methamphetamine to McEwen on or about October 19 and that, in doing so, appellant acted with the intent to participate in a "combination" or in the profits of a "combination" with Brock and McEwen to carry on criminal activities: the delivery of a controlled substance, namely methamphetamine. The testimony of Brock and McEwen, as corroborated by text messages, reflects that appellant and Brock delivered at least fourteen grams of methamphetamine to McEwen on October 18. The evidence also shows that the criminal act was not an isolated incident but, rather, a continuing course of conduct and that appellant had the intent to participate in the combination

---

[1]We note that McEwen's phone did not contain any text messages dated prior to October 17.

4

or the profits thereof. *See Hart v. State*, 89 S.W.3d 61, 63–64 (Tex. Crim. App. 2002). Pursuant to Section 71.01(a)(3), participants in a combination of three or more persons collaborating to carry on criminal activities "may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations." We hold that the evidence is sufficient to support appellant's conviction for engaging in organized criminal activity. Appellant's third, fourth, and fifth points of error are overruled.

*Corroboration of Accomplice Witnesses*

Appellant urges in his second point of error that the evidence is insufficient because the testimony of the accomplices was not corroborated by other evidence tending to connect appellant to the offense. In order to support a conviction based upon the testimony of an accomplice, there must be corroborating evidence that tends to connect the accused with the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988). To determine the sufficiency of the corroboration, we must examine the testimony of the non-accomplice witnesses and determine if there is inculpatory evidence "tending to connect" appellant to the crime. *Reed*, 744 S.W.2d at 127. An accomplice witness need not be corroborated in all his testimony, and the corroboration need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Id.* When there are conflicting views of the non-accomplice evidence—one that tends to connect the accused to the offense and one that does not—we must defer to the factfinder's resolution of the evidence. *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011).

In this case, the accomplice testimony was corroborated by the testimony of Kaynelle Cassel that she received methamphetamine from appellant and Brock in a similar fashion as described by McEwen, the testimony of Lieutenant Aaron that he "had a wealth of information" from various sources about Brock and appellant supplying narcotics, and evidence of the text messages on McEwen's phone. There were messages sent to McEwen from "Sherry and Bo" on October 17, 18, 19, and 20 indicating that Brock and appellant were making trips to meet with McEwen in the middle of the night. We hold that the record contains inculpatory non-accomplice evidence tending to connect appellant to the crime. Appellant's second point of error is overruled.

*Admission of Hearsay into Evidence*

In appellant's first point, he complains of the admission into evidence of an out-of-court statement made by Thomas to police after Thomas was arrested. The record shows that the State, aware that Thomas had no desire to testify at appellant's trial, called Thomas as a witness in order to get his statement admitted into evidence. The trial court addressed the issue outside the presence of the jury. Each sentence of Thomas's statement was addressed at the hearing. Portions of the statement were redacted, but objectionable parts remained in the exhibit admitted at trial. The redacted statement, with errors shown as in the exhibit, reads:

> I got out of TDCJ two months ago in August. I have known Cheryl Cogburn [McEwen] from knowing he husband Wayne Cogburn. Before I went to prison I use to get drugs from Cheryl. This last time I met up with her she was living in Shamrock Shores in Leo's house. This is when I started using again and have been using a gram a day. I have used with Cheryl. We both use syringes. At first I did not know at first who she was getting her methamphetamine from but it did not take long. I have been living with Cheryl. I met Bo and Sherry for about a month. I met them through Cheryl. Most of the time Cheryl would get one ounce of methamphetamine but the most I have seen her get was two ounce and this was on a trip that we met them on the road to Abilene. Cheryl had a list of spots that she would met Sherry and Bo. I have been all the way to Abilene to there house. Cheryl usually meets with them once a day in the early morning hours. They will bring one ounce of methamphetamine and a quarter ounce of cocaine every day and have done so the whole month that I have known them. Sherry and Bo are charging $1300.00 to $1200.00 an ounce of methamphetamine. I'm not sure what the quarter ounce of cocaine. The transactions of money and drugs occurred between Cheryl and Sherry. The night I got arrested I came back to the house and I got a gram and I bought one gram for some friends and she gave me what she said was 2.5 grams just so I did not have drive back and forth to her house. Last night Bo and Sherry called or text messages Cheryl and said they were on there way. I did not know where they were going to meet because I was going back to Rising Star.

We review the decision to admit evidence under an abuse of discretion standard and will not reverse that decision absent a clear abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). As the proponent of the evidence, the State had the burden to establish that a hearsay exception applied. *Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008). The State asserted that Thomas's statement was admissible as an exception to the hearsay rule because it was a statement against penal interest under TEX. R. EVID. 803(24) and a recorded recolection under TEX. R. EVID. 803(5).

6

Under Rule 803(24), statements against penal interest are admissible as an exception to the hearsay rule if the statement tended to subject the declarant to criminal liability such that a reasonable person in the declarant's position would not have made the statement unless he believed it to be true and, in criminal cases, if corroborating circumstances clearly indicate the trustworthiness of the statement. *See Cofield v. State*, 891 S.W.2d 952, 944–56 (Tex. Crim. App. 1994). The Court of Criminal Appeals has held: "Both statements that are directly against the declarant's interest and collateral 'blame-sharing' statements may be admissible under Rule 803(24), if corroborating circumstances clearly indicate their trustworthiness. 'Blame-shifting' statements that minimize the speaker's culpability are not, absent extraordinary circumstances, admissible under the rule." *Walter v. State*, 267 S.W.3d 883, 896 (Tex. Crim. App. 2008) (footnote omitted). A trial judge is obligated to parse a generally self-inculpatory narrative and weed out those specific factual statements that are self-exculpatory or shift blame to another. *Id.* at 897. Although Thomas's statement as redacted included direct statements against Thomas's interest and blame-sharing statements that were admissible under the rule, it also included numerous blame-shifting statements that should not have been admitted at appellant's trial. Following the approach formally adopted by the court in *Walter* with respect to Rule 803(24) and the holding in *Walter*, we hold that the trial court erred in admitting those particular statements that shifted blame to others. *See id.* at 896, 900.

We also hold that Thomas's statement was not admissible under Rule 803(5), which provides that the following is not excluded by the hearsay rule:

> **Recorded Recollection.** A memorandum or record concerning a matter about which a witness once had personal knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly, unless the circumstances of preparation cast doubt on the document's trustworthiness. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

To satisfy Rule 803(5), four elements must be met: (1) the witness must have had firsthand knowledge of the event, (2) the written statement must be an original memorandum made at or near the time of the event while the witness had a clear and accurate memory of it, (3) the witness must lack a present recollection of the event, and (4) the witness must vouch at trial for the accuracy of the written statement. *Johnson v. State*, 967 S.W.2d 410, 416 (Tex. Crim. App. 1998). The facts of this case are similar to those in *Johnson*, wherein the surviving victim gave a

written statement to police shortly after the crime but was uncooperative when called to testify at trial. In *Johnson*, the witness's statement was read into evidence as a recorded recollection after the witness testified that he did not remember anything about the incident or his statement. *Id.* at 414–16. The witness identified his signature on the statement and acquiesced when the State asserted that the facts were "more fresh in [his] mind" when he gave the statement to the police. *Id.* at 415. The court held that the State did not satisfy the first and fourth elements required to lay a proper predicate under Rule 803(5) because the witness did not testify that he was present during the offense and because the witness did not guarantee that his memory was correctly transcribed or that the factual assertions contained in the statement were true. *Id.* at 417.

In the present case, Thomas testified that he signed the statement, but he did not testify at trial that he had firsthand knowledge of the events contained in his statement. Nor did he vouch at trial for the accuracy of his statement. Instead, Thomas testified that reading the statement did not refresh his recollection, that he could not recall what was true and what was not, that he vaguely remembered the day of his arrest, that he vaguely remembered talking to Lieutenant Aaron, that Lieutenant Aaron typed the statement after "throwing stuff out there" and "dragging out of me what he wanted said," that he had been up for days or weeks and was still high when he gave the statement, that he did not know what he was signing, and that he could not testify that what was written in the statement was true. When specifically asked if the information in his statement was "true," Thomas testified, "Some of it could and some of it is not." When asked later whether Lieutenant Aaron had just "made up" what was written in the statement, Thomas testified, "Some of that is probably true and some of it, I don't know about." Thomas testified that he could not recall which portions were true. The requirements of Rule 803(5) were not met in this case.[2] Therefore, Thomas's statement was not admissible as a recorded recollection.

Because the statement was not admissible under Rule 803(5) and because only portions of Thomas's statement were admissible under Rule 803(24), we hold that the trial court abused its discretion in admitting the inadmissible, blame-shifting portions of Thomas's statement into evidence. Having determined that the trial court erred, we must now determine whether the error is reversible under TEX. R. APP. P. 44.2(b), which applies to nonconstitutional errors. Pursuant to

---

[2]We note also that, instead of being read into evidence as permitted by Rule 803(5), Thomas's redacted statement was admitted into evidence as an exhibit.

Rule 44.2(b), an error is not reversible error unless it affects a substantial right of the defendant. A substantial right is affected when the error has a substantial and injurious effect or influence in determining the jury's verdict. *Johnson v. State*, 43 S.W.3d 1, 4 (Tex. Crim. App. 2001); *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). When conducting a Rule 44.2(b) harm analysis based upon the erroneous admission of evidence, an appellate court should consider everything in the record, including "any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error." *Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005).

The record shows that the blame-shifting portions of Thomas's statement, which is set forth in full above, were largely repetitive of the testimony of McEwen and Brock and were also repetitive of other testimony and evidence regarding Thomas's arrest and possession of methamphetamine, of Lieutenant Aaron's testimony, and of other evidence regarding the meeting places and the text messages. Although some of the objectionable portions of Thomas's statement were mentioned briefly in the State's closing argument, the record shows that the State, in three paragraphs, was merely attempting to show that Thomas's statement was corroborated by other non-accomplice testimony or evidence. In its charge, the trial court had instructed the jury that Thomas, McEwen, and Brock were accomplices and had given an accomplice witness instruction with respect to their testimony. Considering everything in the record, we cannot hold under the circumstances in this case that the erroneously admitted portions of Thomas's statement had a substantial or injurious effect or influence upon the jury's determination of the verdict. Appellant's first point of error is overruled.

*Jury Charge*

In his final two points, appellant complains of errors in the jury charge. In the sixth point of error, appellant urges that the trial court's charge on circumstantial evidence violated TEX. CODE CRIM. PROC. ANN. art. 36.14 (West 2007) because it was a comment on the weight of the evidence. In its charge to the jury, the trial court informed the jury that McEwen, Brock, and Thomas were accomplices and gave an accomplice witness instruction that incorporated the provisions of Article 38.14. The trial court then instructed the jurors: "Circumstantial evidence

can corroborate the testimony of an accomplice witness." This language, though not contained in Article 38.14 or elsewhere in the statutes, is a correct statement of the law because corroborating evidence may be either direct or circumstantial. *See Smith*, 332 S.W.3d at 442; *Brown v. State*, 672 S.W.2d 487, 488 (Tex. Crim. App. 1984). The instruction is also neutral and does not pluck out any specific piece of evidence; however, it does single out a certain type of evidence—circumstantial evidence—and does focus the jury's attention on that type of evidence as corroboration for accomplice testimony. *See Brown v. State*, 122 S.W.3d 794, 802 (Tex. Crim. App. 2003). In *Brown*, the court addressed the propriety of instructing the jury that "intent or knowledge may be inferred by acts done or words spoken." *Id.* at 801. The court noted that the instruction was neutral and that it was a judicial review device for assessing the sufficiency of the evidence, but the court held that the instruction was "marginally" an improper comment and that the trial court erred in including it in the jury charge. *Id.* at 802–03. Following the reasoning and the analysis of the court in *Brown*, we hold that the trial court erred by instructing the jury that "[c]ircumstantial evidence can corroborate the testimony of an accomplice witness."

Appellant concedes that he did not object at trial to the inclusion of this instruction in the jury charge or otherwise bring the error to the attention of the trial court. When a defendant fails to object at trial to an error in the jury charge, he is entitled to a reversal only if that error results in "egregious harm." *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985); *see* TEX. CODE CRIM. PROC. ANN. art. 36.19 (West 2006). The *Brown* court addressed whether the instruction in that case, to which the defendant had objected, caused "some harm" and held that it was "not, in any sense, harmful." 122 S.W.3d at 803. As in *Brown*, the instruction in this case was mild, neutral, and an obvious common-sense proposition. *See id.* We have reviewed the entire jury charge, the evidence, the arguments of counsel, and other relevant information as required by *Almanza*, and we conclude that the error was not so egregious as to deny appellant a fair and impartial trial. Appellant's sixth point of error is overruled.

In his final point, appellant argues that the trial court erred in overruling his objection to the accomplice witness instruction in the jury charge. The trial court instructed the jury as follows:

> The witnesses, Cheryl McEwen, Sherry Brock, and Clifton Thomas, are accomplices, if an offense was committed, and you cannot convict the defendant upon his or her testimony unless you first believe that his or her testimony is true and shows that the defendant is guilty as charged, and then you cannot convict the

10

defendant upon said testimony unless you further believe that there is other testimony *or evidence* in the case, outside of the *testimony* of Cheryl McEwen, Sherry Brock, and Clifton Thomas tending to connect the defendant with the offense committed, if you find that an offense was committed, and the corroboration is not sufficient if it merely shows the commission of the offense, but it must also tend to connect the defendant with its commission, and then from all of the evidence you must believe beyond a reasonable doubt that the defendant is guilty of the offense charged against him (emphasis added).

Appellant objected and requested an instruction similar to the one given, with the main differences being (1) the omission of the above-italicized "or evidence" and (2) the replacement of the above-italicized "testimony" with the word "evidence." Appellant's requested instruction tracked the language of an instruction taken from a footnote in *Munoz v. State*, 853 S.W.2d 558, 560 n.4 (Tex. Crim. App. 1993). The jury instruction was not at issue in *Munoz*. During its discussion of the sufficiency of the corroborating evidence, the Court of Criminal Appeals merely noted the accomplice witness instruction that had been given by the trial court. *Munoz*, 853 S.W.2d at 559–64, 560 n.4.

The instruction given by the trial court in this case more closely tracks the language of the applicable statute than did appellant's requested instruction. The Code of Criminal Procedure provides: "A conviction cannot be had upon the *testimony* of an accomplice unless corroborated by other *evidence* tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Article 38.14 (emphasis added). Furthermore, the instruction requested by appellant inappropriately requires that there be corroborating "testimony," whereas Article 38.14 requires only that there be corroborating "evidence." In the context of Article 38.14, the term "evidence" encompasses exhibits and, therefore, does not equate to "testimony." *Bingham v. State*, 913 S.W.2d 208, 210 (Tex. Crim. App. 1995).

Appellant argues that the trial court's instruction was confusing because it permitted the jury to consider Thomas's written statement as evidence without requiring that it be corroborated and because it allowed an accomplice (through Thomas's statement) to corroborate other accomplices. In *Bingham*, the Court of Criminal Appeals determined that an out-of-court statement made by an accomplice need not be corroborated and that only the in-court testimony of an accomplice must be corroborated. 913 S.W.2d at 211–13. We agree with appellant that the facts of *Bingham* are distinguishable because the accomplice did not testify in that case; however, we do not believe that distinction to be controlling. The court in *Bingham* noted the

11

inherent reliability of an accomplice's out-of-court statement when it falls within an exception to the hearsay rule,[3] stated the court's belief that the legislature "did not regard such statements with the same degree of suspicion as it did an accomplice witness who testifies in court," and effectuated legislative intent by "read[ing] Article 38.14 to embrace only the in-court 'testimony' of an accomplice." *Id.* at 211. Based upon the specific use of the term "testimony" in Article 38.14 and the court's opinion in *Bingham*, it seems clear that only the in-court testimony of an accomplice must be corroborated. *See Archie v. State*, 340 S.W.3d 734, 737 n.3 (Tex. Crim. App. 2011) (citing *Bingham* and stating that the testifying accomplice's "out-of-court statement did not *itself* have to be corroborated under Article 38.14").[4] Because the instruction given by the trial court in this case generally tracked Article 38.14, because appellant's requested instruction was in part improper, and because only the in-court testimony of an accomplice need be corroborated, we hold that it was not error for the trial court to overrule appellant's objection or to refuse to give appellant's requested instruction. Appellant's seventh point of error is overruled.

The judgment of the trial court is affirmed.

JIM R. WRIGHT

CHIEF JUSTICE

June 28, 2012

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.

---

[3]We note, as discussed above, that some portions of Thomas's out-of-court statement were properly admitted but that other portions were erroneously admitted. The inadmissibility of portions of that statement, however, does not affect the propriety of the jury charge.

[4]We note that an accomplice's prior out-of-court statements may not be used to corroborate his testimony for purposes of Article 38.14. *Archie*, 340 S.W.3d at 737 n.3; *Smith*, 332 S.W.3d at 439.